ACME BRICK AND SUPPLY COMPANY, Plaintiff-Appellant, v. THE DE-PARTMENT OF REVENUE *et al.*, Defendants-Appellees.

Second District   No. 84—0406

Opinion filed May 31, 1985.

Hercules Paul Zagoras, of Waukegan, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Patricia Rosen and Gabriel Rodriguez, Assistant Attorneys General, of Chicago, of counsel), for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff, Acme Brick and Supply Company (Acme), appeals from the judgment of the circuit court of Lake County which affirmed a decision of the Illinois Department of Revenue (Department), which assessed Acme in the amount of $23,827.64 for overcollection of taxes.

Acme, located in Waukegan, is engaged in the business of selling building supplies to the public. Some of Acme's sales and deliveries are made in the State of Wisconsin. Acme is registered in Illinois for tax purposes but not in Wisconsin. It is subject to the Illinois Retailers' Occupation Tax Act (ROTA) (Ill. Rev. Stat. 1979, ch. 120, par. 440 et seq.).

A test check of Acme's records was done during an audit by the Department. It was discovered that during the period January 1977 through September 1979, Acme collected a tax on nontaxable sales. Acme was notified of its tax liability in June 1980. It protested the notice of tax liability and requested a hearing on the matter.

A hearing was conducted before a hearing officer on November 7, 1980. Testimony at the hearing showed that Acme paid (taxes) on a receipts' basis rather than a sales' basis. The Department examined Acme's invoices and found that Acme collected a 4% tax from the purchaser on interstate sales. The tax was stated on the invoices as "4%," "4% OE," "4% tax," or "4% Wisconsin tax." The parties agreed that the tax was collected on interstate sales.

Acme claimed it collected the 4% tax on the interstate sales because it thought it would have to pay Wisconsin, although it was not registered to pay taxes in that State. It later learned it was not required to register in Wisconsin. Acme did not pay the taxes to Wisconsin or Illinois, nor did it refund the money to the purchasers.

The Department assessed Acme for the amount of the taxes Acme collected on the interstate sales pursuant to Department rules and regulations. The rule, identified as article 8, section 1f, in the record, provided that if a seller collected an amount which purported to reimburse the seller for Retailers' Occupation Tax (ROT) liability measured by receipts where no such tax was assessed, the seller was liable to pay the Department the amount collected where the amount was not refunded to the purchaser.

A final assessment was issued by the Department and a revised final assessment was issued on October 22, 1982. Acme filed a complaint for administrative review of the assessment.

The trial court affirmed the Department's assessment against Acme. The Department did not assess a tax on Acme's sales in inter-

state commerce but based Acme's liability on section 2 of the ROTA. (Ill. Rev. Stat. 1979, ch. 120, par. 441.) The trial court found that Acme collected an amount from Wisconsin customers to reimburse itself for tax liability to which it was not subject because the transactions were exempt as sales in interstate commerce under section 2. The trial court determined that the purpose of section 2 was to prevent the unjust enrichment of the seller, which was a sufficient reason to allow the State to retain the amount of tax money Acme collected. It also held that express statutory authority existed for the Department to use an administrative assessment proceeding. (Ill. Rev. Stat. 1979, ch. 120, pars. 443, 444.) The trial court found that the decision of the Department was not contrary to the manifest weight of the evidence.

Acme appeals and enumerates three issues for review, which are: (1) whether the Department can collect a tax on sales made in interstate commerce and delivered in Wisconsin; (2) whether the Department acted beyond its authority when it sought to collect the money from Acme that Acme erroneously collected as a tax on sales made in interstate commerce; and (3) whether an administrative hearing was the proper procedure to collect the money from Acme that Acme erroneously collected as a tax on sales made in interstate commerce.

The ROT is not a tax on sales but is a tax on occupation (*Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132), even though the tax is measured by the receipts from sales of goods (*Pierce v. Pacini* (1970), 127 Ill. App. 2d 1). At the time this action began, the ROT imposed upon persons engaged in the business of selling tangible personal property at retail was 4% of the gross receipts. (Ill. Rev. Stat. 1979, ch. 120, par. 441.) Excluded from the gross receipts were the proceeds from certain sales as provided in (a) through (d) (hereinafter exemptions (a) through (d)). Generally, these sales were of farm chemicals; sales made to any government body, charitable, religious, or educational organizations; sales made to interstate carriers for hire for use as rolling stock; or the sale of machinery and equipment to be used primarily in the process of manufacturing property for resale. Section 2 further provided in the fourth paragraph that the ROT was not "imposed upon the privilege of engaging in any business in interstate commerce or otherwise." Ill. Rev. Stat. 1979, ch. 120, par. 441.

It is the last paragraph of section 2 which is the main source of controversy herein. It provides:

> "If any seller collects an amount (however designated) which
> purports to reimburse such seller for retailers' occupation tax

liability measured by receipts which are not subject to retailers' occupation tax, or if any seller, in collecting an amount (however designated) which purports to reimburse such seller for retailers' occupation tax liability measured by receipts which are subject to tax under this Act, collects more from the purchaser than the seller's retailers' occupation tax liability on the transaction is, the purchaser shall have a legal right to claim a refund of such amount from such seller. However, if such amount is not refunded to the purchaser for any reason, the seller is liable to pay such amount to the Department. This paragraph does not apply to an amount collected by the seller as reimbursement for the seller's retailers' occupation tax liability on receipts which are subject to tax under this Act as long as such collection is made in compliance with the tax collection brackets prescribed by the Department in its Rules and Regulations." Ill. Rev. Stat. 1979, ch. 120, par. 441.

In the first issue Acme argues the familiar general proposition that a State cannot interfere with interstate commerce by imposing a tax on interstate commerce. It then claims that the sales involved herein were sales in interstate commerce and, thus, were not taxable transactions. It argues the sales were entitled to the exception in the statute. Ill. Rev. Stat. 1979, ch. 120, par. 441.

The Department responds by stating that Acme has erroneously assumed that the Department was collecting a tax when it was actually imposing a civil penalty to prevent Acme's unjust enrichment. Relying upon the last paragraph of section 2, it notes that when an Illinois retailer collects excessive taxes by either collecting a tax on an exempt transaction or collects too much tax on a taxable transaction, the retailer is obligated to return the excessive funds to the purchaser. If the retailer fails to refund the overcollection, then it must remit the overcollection to the Department. (Ill. Rev. Stat. 1979, ch. 120, par. 441.) This provision in section 2 is referred to by the trial court and the parties as the "unjust enrichment" portion, and we shall refer to it in the same manner.

The Department also notes that the administrative rule which provided for the civil penalty (art. 8, sec. 1f), is currently codified in 86 Illinois Administrative Code (ch. 1, sec. 130.901(f)). The rule and other administrative rules are found in the appendix to the Department's brief.

Acme objects to the insertion of the rules in the Department's appendix. It claims that the rules were passed in 1979, after the assessments in the instant case. The Administrative Code is not part of the

record nor was the trial court asked to take judicial notice of the code. Acme argues that a reviewing court cannot take judicial notice of the code.

■■ While it is true that a decision made pursuant to an administrative hearing must be based on testimony and other evidence presented at the hearing (*Des Plaines Currency Exchange, Inc. v. Knight* (1963), 29 Ill. 2d 244), a court may properly take judicial notice of administrative rules and regulations (*Sturm v. Block* (1979), 72 Ill. App. 3d 306). When the rules and regulations are not part of the record on appeal, the appellate court can take judicial notice of them. (*Sye v. Wood Dale Fire Protection District No. 1* (1976), 43 Ill. App. 3d 48.) At any rate, the rule under which the Department purported to act, article 8, section 1f, was read into the record during the administrative hearing and the same language is used in section 130.901(f).

■■ The record demonstrates that Acme's first issue is really not a matter in dispute between the parties. The Department and Acme agree that the sales involved herein were sales in interstate commerce. Section 2 of the ROTA specifically provides that the tax is not imposed upon the privilege of engaging in business in interstate commerce. Ill. Rev. Stat. 1979, ch. 120, par. 441; *Sinclair Refining Co. v. Department of Revenue* (1971), 50 Ill. 2d 201, 205.

The second issue concerns Acme's interpretation of section 2 of the ROTA (Ill. Rev. Stat. 1979, ch. 120, par. 441). Acme claims that overcollection of taxes may be "measured by receipts which are subject to tax under this Act." (Ill. Rev. Stat. 1979, ch. 120, par. 441.) It argues that it collected the tax made on sales in interstate commerce, which receipts were not the subject of taxation under the ROTA. Acme incorrectly states that if it had collected a tax on sales made under the exemptions (a) through (d), then those overcollections would have been "measured by receipts which are subject to tax under this Act." This interpretation of section 2 is wrong, because the transactions Acme refers to are those which are *excluded* from the gross receipts for the purpose of imposing the tax. Taxes collected on sales made under exemptions (a) through (d) would be "measured by receipts which are not subject to retailers' occupation tax." Ill. Rev. Stat. 1979, ch. 120, par. 441.

Acme concedes that if it had collected a tax on any of the exemptions (a) through (d), the Department could assess Acme for the overcollection in an administrative proceeding. However, it claims that this is the extent of the Department's authority under section 2. Acme argues that the Department has no authority to claim the overcollection of taxes taken from sales in interstate commerce.

Acme relies upon the argument that the statute is ambiguous, citing the rule of construction that where the meaning of the language is in doubt, the law is to be construed more strongly against the government and in favor of the taxpayer. (*First National Bank v. Department of Revenue* (1981), 85 Ill. 2d 84.) It is Acme's position that if the legislature intended the Department to collect the overcollection of taxes taken from sales in interstate commerce, the legislature would have stated such in section 2.

The legislative intent in enacting a statute must be determined primarily from the language found in the statute, and where the intent can be ascertained from the language, it should prevail without resort to other aids for construction. (*Berwyn Lumber Co. v. Korshak* (1966), 34 Ill. 2d 320, 323.) The reason and necessity for the Act and the objects and purposes sought to be accomplished are other considerations in determining legislative intent. (*Follett's Illinois Book & Supply Store, Inc. v. Isaacs* (1963), 27 Ill. 2d 600, 606.) Rules of construction are used only for the purpose of resolving ambiguities, and the entire section and Act must be read together to provide harmony and consistency in all its parts. *People ex rel. Roan v. Wilson* (1950), 405 Ill. 122, 127-28.

While section 2 imposes the tax on retailers, retailers can pass the burden of the tax onto the purchaser. (*Johnson v. Marshall Field & Co.* (1974), 57 Ill. 2d 272.) Because the burden can be shifted, the legislature chose to exempt certain purchasers from the tax. Governmental bodies and charities are exempt purchasers, because reduced costs of government and charities relieve the State of many burdens it would otherwise be obligated to bear. (*People ex rel. Holland Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477.) The legislature also provided for other specific exemptions in (a), (c), and (d). Ill. Rev. Stat. 1979, ch. 120, par. 441.

■ The tax is imposed upon the person "engaged in the business of selling tangible personal property at retail" with the explicit exclusion of "any business in interstate commerce." (Ill. Rev. Stat. 1979, ch. 120, par. 441.) Since the tax is measured by the gross receipts of the sales of the business, it follows that the gross receipts from the sales of business in interstate commerce are exempt from the tax.

It is evident that Acme has implicitly relied upon this interpretation of section 2 in order to claim an exemption from the retailers' occupation tax. Under the ROTA, all sales of tangible personal property for retail are taxable unless the taxpayer can establish a reason for nonliability for the tax. (*Pedigo v. Department of Revenue* (1982), 105 Ill. App. 3d 759.) The record herein shows that during an audit of

Acme's books, it was discovered by the Department that Acme had collected a 4% tax from the purchaser on its gross receipts from certain retail sales. Although Acme was registered for tax purposes in Illinois, it had not paid retailers' occupation tax to Illinois on these sales. It claimed that the gross receipts from the sales involved were not subject to the Illinois Retailers' Occupation Tax because the sales were in interstate commerce. The Department agreed that the sales were in interstate commerce, and thus the gross receipts were not subject to the tax.

In *Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, the purchasers (plaintiffs) maintained that they were required to pay State use tax and to reimburse the retailers for municipal and county retailers' occupation taxes when they purchased cigarettes. The taxes imposed on the purchasers were calculated by including within the tax base the amount of cigarette use tax payable by the purchaser as part of the selling price of the cigarettes. However, the supreme court had earlier determined in *Dick's Vending Service, Inc. v. Department of Revenue* (1972), 53 Ill. 2d 375, that the State cigarette use tax was not to be included in computing the retailers' occupation tax. By including the cigarette use tax, the tax base was increased $1.20 per carton of cigarettes. One of the issues involved in *Adams,* relevant to the issue herein, concerned the purchaser's right to proceed against the retailers for the overcharge in taxes remitted to the Department.

The purchasers in *Adams* relied upon a then-recent amendment to section 3 of the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.3), in order to place liability directly on the retailers. The amendment was worded essentially the same as the unjust enrichment provision found in section 2 of the ROTA at issue herein, except to the reference to use tax rather than ROT. (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 344.) The retailers construed the amendment to permit a purchaser a direct cause of action against the retailer only when the retailer had not remitted the excessive charges to the Department and was thus unjustly enriched. The purchasers agreed with that determination but also argued that enrichment was not the only purpose of the amendment. They claimed the amendment allowed the purchaser a direct cause of action against the retailer even when the retailer had remitted the excessive sums to the Department.

The supreme court rejected the purchasers' interpretation and determined that the amendment was a codification of prior existing case law summarized in *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52. Under the circumstances of those cases, the amendment did not permit a direct action against the retailer by the purchaser (when the

retailer remitted the amount to the State). *Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 346.

The *Adams* holding, as noted by the supreme court, allowed the State to retain tax monies that were not statutorily authorized. The purchasers had the necessary procedures available to them to advance their claims but failed to use them. (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 349.) One of the retailer-defendants involved in the consolidated appeal, Jewel, had collected tax overcharges which were not remitted to the Department until the purchaser brought suit. The trial court found that a class action was improper and directed Jewel to turn over the unremitted amounts to a financial institution as trustee for the Department.

■ Turning to a consideration of the last paragraph of section 2 of ROTA (Ill. Rev. Stat. 1979, ch. 120, par. 441), in view of *Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, the legislative purpose for the provision is to prevent the unjust enrichment of the seller. The paragraph applies to the situation where a seller collects an amount purportedly to reimburse the seller for ROT liability "measured by receipts which are not subject" to the tax. (Ill. Rev. Stat. 1979, ch. 120, par. 441.) We have already stated that the receipts from sales of business in interstate commerce are not subject to the ROT. The purpose of the statute would be defeated under Acme's limited interpretation because a seller which improperly collected the ROT on sales made in interstate commerce would be unjustly enriched if the purchaser did not exercise the legal right to claim a refund or the excessive tax money was not remitted to the Department.

The Department argues that the unjust enrichment provision of section 2 is a civil penalty imposed upon a seller for the improper collection of the ROT. Article 8, section 1f, was clearly derived from section 2 of the ROT. Article 8, section 1f, as codified in the Illinois Administrative Code, provided in the Department's appendix on appeal, is identified as a civil penalty in the code.

■ Statutory interpretations by administrative agencies express an informed source for ascertaining the legislative intent. (*Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 344-45.) The delegation to administrative agencies of the power to impose what practically, though not formally, may be considered a penalty has been upheld on review. (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 179.) While not expressly stated as a penalty in section 2, as other penalties are provided for such as in section 4 and section 5 (Ill. Rev. Stat. 1979, ch. 120, pars. 443, 444), section 2 can be viewed as a penalty imposed against the seller to prevent the seller's unjust enrich-

ment. The assessment against the seller in the amount of tax money it improperly collects "satisfies and prevents the unjust enrichment purpose of our Revenue Act of 1939." (*Central Illinois Light Co. v. Department of Revenue* (1983), 117 Ill. App. 3d 911, 916.) The amount of the penalty is a matter of calculating the amount of tax improperly collected and is not discretionary. Although section 2 allows the State to retain amounts of tax monies that were not statutorily authorized (see *Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336), the provision is valid.

■ Acme argues that enforcement of the unjust enrichment provision would be too difficult to accomplish. However, enforcement of section 2 with regard to receipts from sales of interstate commerce has not been shown by Acme to be any more or less difficult than enforcement with regard to receipts from the exemptions (a) through (d). Its claim that the Department's interpretation gives the State the right to analyze a multistate corporation's tax returns in each State to determine if overcollections were made is strictly conjecture. Enforcement is achieved in the same manner as was involved herein: the Department can determine the overcollection of taxes merely by examining the Illinois seller's books, *i.e.*, receipts, invoices, and then calculating the amount overcollected.

■ Acme posits a number of questions regarding the effect of section 2 upon Wisconsin purchasers. However, it fails to develop any meaningful argument in this area. These questions need not be addressed, for Acme has no standing to raise issues regarding the effect of section 2 on the rights and interests of Wisconsin purchasers. Besides, the purpose of the statute is to prevent the unjust enrichment of an Illinois seller when the seller improperly collects a tax measured by receipts which are not subject to the retailers' occupation tax or collects more than the amount of tax due on receipts which are subject to the tax. The purpose of the statute is not the protection of Wisconsin purchasers.

Acme contends that it was collecting Wisconsin sales tax from Wisconsin purchasers because it thought it would have to pay Wisconsin taxes on the sales. However, the evidence established that Acme was not registered in Wisconsin for tax purposes and did not pay the taxes collected to Wisconsin.

One final note with regard to the second issue: Acme relies upon *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, and *Chicagoland Agencies, Inc. v. Palmer* (1936), 364 Ill. 13, to support its position that the Department acted beyond its authority. However, neither case is on point with the instant case because they involve different Acts and the delegation of authority under the Acts to differ-

ent agencies. While the cases may support Acme's general claim that administrative powers cannot be extended beyond those delegated by statute, they are not precedent for the issue herein. The Department in the case at bar was not acting beyond the authority provided in section 2 when it collected the tax monies from Acme that Acme improperly collected on sales in interstate commerce.

In the third and last issue, Acme claims the Department should have presented its claim directly in a court of law. Acme argues that an administrative hearing was improper.

Acme relies upon *Roth v. Department of Public Aid* (1982), 109 Ill. App. 3d 457, to support its argument that the Department herein should have taken "its common law rights to recoup overpayments into a court of law." In *Roth*, the court found that the Department of Public Aid was not authorized under statute to exercise its power of recoupment retroactively. Having determined that there was no statutory power, the court then considered whether the Department of Public Aid had a common law right to recoup funds improperly paid by an administrative proceeding. The court concluded that if the common law right to recover misspent funds was retained, the right could only be exercised by a civil action in a court of competent jurisdiction.

*Roth v. Department of Public Aid* (1982), 109 Ill. App. 3d 457, does not support Acme's position. The *Roth* court had first determined that there was no underlying statutory authority for the Department to seek recoupment. However, in the case at bar, the Department had the express statutory authority to collect the tax monies from Acme which Acme improperly collected on sales in interstate commerce under Section 2 of the ROTA. Acme's reference to the Department's "common law rights" is inapposite. The Department had statutory authority to prevent Acme's unjust enrichment.

Nor was it improper to determine the amount of money to be paid to the Department in an administrative hearing. Section 8 of the ROTA specifically authorizes the Department to hold investigations and hearings. (Ill. Rev. Stat. 1979, ch. 120, par. 447.) The Administrative Procedure Act and the Administrative Review Act are specifically adopted in sections 11(a) and 12. (Ill. Rev. Stat. 1979, ch. 120, pars. 450a, 451.) There are many cases upholding the authority of the Department to use an administrative proceeding rather than initially proceeding in a court of law. See *Department of Revenue v. Steacy* (1967), 38 Ill. 2d 581; *Department of Finance v. Cohen* (1938), 369 Ill. 510.

Acme's claim that the hearing was improper because the hearing officer acted as prosecutor, judge and jury is not sufficient to over-

768

turn its decision. The practice of having a hearing officer act as a representative of the Department is not, in and of itself, a constitutional deprivation. (*Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132.) There is no prohibition against this procedure. (*Puleo v. Department of Revenue* (1983), 117 Ill. App. 3d 260.) Such procedures, along with the right to administrative review in the courts, have been upheld in Illinois. *Sundstrand Corp. v. Department of Revenue* (1975), 34 Ill. App. 3d 694.

Acme's claim that the Department should not be allowed to collect the tax money under section 2 by administrative proceedings is rejected.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

LINDBERG and REINHARD, JJ., concur.