THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
TRACY L. DAVIS, Defendant-Appellee.

Second District   No. 2—88—0288

Opinion filed March 17, 1989.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael T. Smith, of Schaumburg, and Rochelle J. Brinnick, of Chicago, for appellee.

JUSTICE NASH delivered the opinion of the court:

The State appeals from a judgment of the circuit court which rescinded summary suspension of the driving privileges of defendant, Tracy Davis, pursuant to section 2—118.1 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 2—118.1). The State contends that such rescission was improper as it was based upon the trial court's erroneous finding that a breathalyzer result of .10 is automatically subject to, and reduced by, an industrial tolerance level of .01, thus requiring rescission of the summary suspension of defendant's driver's license.

The defendant, Tracy Davis, was arrested in the early morning hours of December 27, 1987, by an Elmhurst city police officer and charged with driving under the influence of alcohol in violation of section 11—501(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)). At the police station, the defendant voluntarily submitted to a breathalyzer test on which she registered a result of .10. On the basis of this test result, the arresting officer, Michael Campise, prepared a law enforcement sworn report and served notice upon the defendant of the summary suspension of her driving privileges, pursuant to section 11—501.1 of the Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1).

The defendant requested a summary suspension hearing at which she presented her own testimony and that of Officer Campise. During closing argument, defense counsel stated that the type of breath-analyzing machine used in testing defendant (Smith and Wesson Model 2000) had "an industrial tolerance level of .01." The State objected to this assertion and argued that the court should not take the defense

counsel's statement into consideration as there was no evidence presented on the issue of variance, and defense counsel had failed to ask the court to take judicial notice of the Department of Public Health standards relating to breath-analyzing machines.

The trial court found that Officer Campise had reasonable ground to arrest the defendant and that there were sufficient facts for him to have concluded that the defendant was driving under the influence of alcohol. However, the court stated that it would be improper not to take judicial notice "of the plus or minus ratio—the tolerance, plus or minus, on the machine." Because the defendant's breathalyzer test result was exactly .10, and because of the claimed standards allowing for a tolerance, the trial court granted the defendant's petition to rescind the summary suspension of her driving privileges.

The sole issue presented is whether the trial court erred in taking judicial notice of an asserted "industrial tolerance level" on breathalyzer machines which would require breathalyzer test results of .10 to fail to support the automatic summary suspension of driving privileges required by section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1). The State contends that the tolerance level of a breathalyzer machine is not subject to judicial notice because it is not a fact that is generally known to be true by everyone; the State further contends that if such fact were so well known, the legislature must have taken its existence into account when drafting the applicable driving-under-the-influence statutes. The State concludes that the trial court's interpretation that the summary suspension statute does not apply when a breathalyzer test result exactly equals .10 renders a portion of the statute meaningless. We agree and reverse the erroneous judgment which rescinded the summary suspension of defendant's license on this novel theory.

Section 11—501.1(d) provides that if a motorist refuses to submit to a chemical test of blood, breath or urine for the purpose of determining alcohol concentrations therein, or, having submitted to such test, the motorist's alcohol concentration is determined to be .10 or more, the arresting officer must prepare a sworn report and submit it to the appropriate circuit court and the Secretary of State. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(d).) Section 11—501.1(e) of the Code further requires that upon receipt of such sworn report, the Secretary of State shall summarily suspend the motorist's driving privileges. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1(e).) Elsewhere in the Code, driving under the influence of alcohol is prohibited (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(2)), as is driving when a motorist's blood or breath contains an alcohol concentration of .10 or

more, as disclosed by chemical analysis (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)). Such chemical analysis gives rise to certain presumptions, as in section 11—501.2(b)(3), which provides that if a motorist's alcohol concentration is .10 or more, "it shall be presumed that the person was under the influence of alcohol." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.2(b)(3).) These statutes which pertain to the offense of driving under the influence of alcohol and the testing of persons suspected of driving under the influence are consistent and clear in their application of the standards set by the legislature. An alcohol concentration of .10 or more as shown by chemical analysis triggers specific statutory action on the part of law enforcement officials and the Secretary of State, and, as noted above, the showing of such an alcohol concentration gives rise to a presumption that the individual was under the influence of alcohol.

In spite of the clear direction set forth by the legislature with regard to a motorist's alcohol-concentration level as determined through chemical analysis, the defendant contends that "the statutes provide for suspension in cases where a motorists [*sic*] *blood alcohol concentration*, not test results, is .10 or greater." (Emphasis in defendant's brief.) The defendant is apparently arguing that the various statutory references to alcohol concentration actually indicate an absolute value rather than the results disclosed by chemical testing of an individual's blood, breath or urine. Thus, the defendant argues, any variance in a testing procedure such as the "industrial tolerance" asserted to be applicable to a Smith and Wesson Model 2000 breathalyzer machine is relevant to the issue of whether a motorist's driving privileges will be suspended pursuant to section 11—501.1(e) of the Illinois Vehicle Code.

■ Whether a breathalyzer test was properly administered and whether the result obtained is accurate are relevant factors in a summary suspension hearing. We note, however, that the defendant in the present case failed to introduce any evidence that she was improperly tested, that the machine in question malfunctioned or the result was inaccurate. Such evidence is indispensable for the defendant to meet her burden in establishing a *prima facie* case for rescission. See *People v. Orth* (1988), 124 Ill. 2d 326, 336-38, 530 N.E.2d 210, 215; *People v. Torres* (1987), 160 Ill. App. 3d 643, 647, 513 N.E.2d 1142, 1145.

The Department of Public Health has promulgated regulations concerning proper testing methods and trustworthy test results. (77 Ill. Adm. Code 510.10 *et seq.* (1985).) It requires breath-analysis machines to "be accurate within plus or minus 0.01% W/V to be certified [as valid alcohol-concentration analysis machines]." (77 Ill. Adm. Code

510.100(a) (1985).) "W/V" is elsewhere defined as the weight of alcohol per volume of breath or other substance sampled. 77 Ill. Adm. Code 510.20 (1985).

Although the defendant did not offer the above regulations in evidence or refer to them in the trial below, it would appear that she based her argument for rescission on section 510.100(a) (77 Ill. Adm. Code 510.100(a) (1985)). In spite of the defendant's apparent failure to produce the text of the regulations for the court to examine, and her failure to specifically invoke the applicable regulation, the trial court took judicial notice of it and did so simply on defense counsel's general representation as to its provisions.

■■ ■ A court may properly take judicial notice of administrative rules and regulations (*Acme Brick & Supply Co. v. Department of Revenue* (1985), 133 Ill. App. 3d 757, 762, 478 N.E.2d 1380) and can also take notice of facts which are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable authority. (*Vulcan Materials Co. v. Bee Construction* (1983), 96 Ill. 2d 159, 166, 449 N.E.2d 812; see Ill. Rev. Stat. 1985, ch. 110, pars. 8—1001 through 1009.) However, no court can judicially notice a fact, regulation, ordinance, document, or administrative rule unless it has been supplied with or has ready access to the matter to be noticed (see *People v. Davis* (1976), 65 Ill. 2d 157, 165, 357 N.E.2d 792). That did not occur here as no reference to or copy of the regulation which the trial court noticed and relied upon was supplied to it or is found in the record. Nevertheless, we have located the regulation in question, as earlier noted, and will consider whether it was correctly construed in this case.

While the Department of Public Health requires instruments used for the analysis of alcohol concentration to be certifiably accurate within a certain range, that fact does not lead to the necessary conclusion that all such instruments err to that exact degree. It is conceivable that such instruments exist which are able to analyze alcohol concentrations with little or no degree of error whatsoever; however, the regulation only specifies that such instruments must be accurate within plus or minus .01%. Thus, a machine testing at the outer range of accuracy could actually underreport an individual's alcohol concentration. Applying this potential for positive error to the defendant in the present case, whose test result was .10, it is possible, albeit not proved, that her alcohol concentration was, in fact, .11. Under the reasoning applied by the trial court, however, it was assumed that any such error would necessarily be on the negative side, thus reducing the test result to .09, and permitting defendant to retain her driving

privileges. In this case, however, the defendant produced no evidence whatsoever that the particular machine involved in her test on December 27, 1986, erred in any manner.

■ We think it is clear that the various sections of the Illinois Vehicle Code which refer to alcohol-concentration levels refer to alcohol concentrations as revealed by chemical tests or other analysis. The Code does not state nor does it imply that law enforcement officials must somehow obtain absolute values which are certifiably free of any inaccuracy whatsoever. We think it equally clear that the acceptable margin of error on a breathalyzer machine is .01%, as provided in the Department of Public Health Regulations, and conclude that such margin of error is accounted for throughout the statutory scheme.

■ Although the trial court could have properly taken judicial notice of the administrative regulation referred to earlier, if provided to him, it was improper for the court to take judicial notice of or consider the alleged "industrial tolerance level" of the brand of breath-analysis machine used in the defendant's arrest to which defendant's counsel referred in argument. We note that the phrase "industrial tolerance level" was not defined in trial by either of the parties or by the court.

We discussed earlier certain standards governing matters of which courts may take judicial notice. Our supreme court has stated:

> "Courts may take judicial notice of matters which are commonly known (*People v. Tassone* (1968), 41 Ill. 2d 7, 12) or of facts which, while not generally known, are readily verifiable from sources of indisputable accuracy (*People v. Davis* (1976), 65 Ill. 2d 157, 165)." (*Murdy v. Edgar* (1984), 103 Ill. 2d 384, 394, 469 N.E.2d 1085, 1090.)

Thus it has been said that the court does not operate in a vacuum and is to be presumed no more ignorant than the general public. (*People v. Tassone* (1968), 41 Ill. 2d 7, 12, 241 N.E.2d 419, 422.) Both parties correctly characterize the standard for judicial notice of a fact as proper when a particular item is something which is commonly known or "that which everyone knows to be true." (*Tassone*, 41 Ill. 2d at 12, 241 N.E.2d at 422.) In her brief to this court, the defendant claims "it is commonly known that machines are subject to industrial tolerances, so as to make evidence of [this] fact unnecessary." Although she does not specify what type of machine she is discussing, we may take it to mean the Smith and Wesson Model 2000 breathalyzer instrument. As noted above, the phrase "industrial tolerance" was not defined by the defendant or the trial court, and it is apparent that phrase and the defendant's unsupported assertion above are too imprecise for this

court to take judicial notice of their existence. (See *In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 325-26, 491 N.E.2d 894, 898.) Further, neither of these claims is of such a nature as to meet the requirements for judicial notice; if the defendant wished to rely upon the theory of "industrial tolerance" and its significance with regard to her test results, explanation of the theory and its relevance should have been introduced by way of expert testimony. See *Murdy*, 103 Ill. 2d at 394, 469 N.E.2d at 1090.

In view of the foregoing, we find that the trial court's judicial notice of an unsubstantiated theory of "industrial tolerance levels" of breathalyzer machines was improper and that the court incorrectly interpreted and thus misapplied the administrative regulation in rescinding summary suspension of the defendant's driving privileges.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

INGLIS and WOODWARD, JJ., concur.