JOHN NOTTOLI, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Sam McGraw, Acting Director of the Department of Revenue, *et al.,* Defendants-Appellants.

Fourth District   No. 4—94—0542

Argued May 17, 1995.—Opinion filed May 24, 1995.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solic-

itor General, and Jerald S. Post, Assistant Attorney General (argued), of counsel), for appellants.

Merrick C. Hayes (argued), of Hayes, Hammer, Miles, Cox & Ginzkey, of Bloomington, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff John Nottoli, Inc., is a corporation operating an auto and truck rental business as a part of its operation. Plaintiff was assessed alleged deficiencies because of its method of billing State retailer occupation taxes and automobile rental occupation taxes. These were paid under protest, and plaintiff brought this action to recover the payments. The circuit court of McLean County ruled in favor of plaintiff for a part of the contested amounts and for defendant for part of the contested amounts. Only the Illinois Department of Revenue (Department) appeals.

■ Section 3 of the Automobile Renting Occupation and Use Tax Act (Auto Renting Tax Act) (35 ILCS 155/3 (West 1992)) imposes a tax upon persons in the State of Illinois engaged in the business of renting automobiles in Illinois. The rate of tax is 5% of the gross receipts received from such business. Section 4 of the Auto Renting Tax Act (35 ILCS 155/4 (West 1992)) requires those renting from rentors not covered by the Auto Renting Tax Act to pay a 5% tax on rental payments directly to the Department. Both sections contain certain exemptions not relevant to the issue now before our court. *Truck* rentals are not subject to the Act.

Those dealers who rent out vehicles also must pay a retailer's occupation tax (sales tax) on the vehicles, including trucks, when they are converted to rental units. In this case, plaintiff paid that tax when converting the vehicles to rental units.

As an accounting practice, plaintiff sought to recoup the sales tax cost it had incurred when it converted the trucks to rental by adding a 5% "tax" on the rental statement. This 5% "tax" was not forwarded to the Department after it was collected or refunded to the renter. The audit indicated that plaintiff had billed $9,739 for this.

■ Section 2—40 of the Retailers' Occupation Tax Act (Retailers' Tax Act) (35 ILCS 120/2—40 (West 1992)) provides that any collection of tax from a purchaser over and above that due must either be refunded or paid to the State. Based upon the policy of section 2—40, the State contends the 5% added to the customer bill, when no tax was actually due, must be paid to the State.

There is no question that the initial sales tax on the trucks was an expense to plaintiff. Of course, its cost could be considered when

establishing the rental charge. The circuit court of McLean County ordered a refund to plaintiff in the amount of $9,739, plus interest, for the contested tax payment and, in doing that, stated:

> "1. That the amounts collected by the Plaintiff from its lessees representing a reimbursement to Plaintiff of use tax theretofore paid by the Plaintiff is not properly subject to the Retailers Occupation Tax nor [*sic*] payable to Defendant."

The defendant appeals. Actually, no case law has been cited which specifically covers this fact situation. The defendant contends the provisions of the Retailers' Tax Act and the Use Tax Act (35 ILCS 105/1 *et seq.* (West 1992)) must be considered when interpreting the Auto Renting Tax Act. It then contends that any listing of tax on a rental statement must be considered as tax collected and owing because of the transaction. Wrongfully collected tax which is not refunded must be paid to the State. Plaintiff's brief offers no case law and basically argues that plaintiff was authorized to recover sales tax cost, regardless of the method used, by incorporating it into the general lease cost *or* by adding the 5% "tax" listing.

■ There is no question but that section 2—40 of the Retailers' Tax Act is designed to prevent unjust enrichment on the part of retailers by the collection of a retailer occupation tax in excess of that allowed on the property subject to tax. Both *Adams v. Jewel Cos.* (1976), 63 Ill. 2d 336, 345, 348 N.E.2d 161, 166, and *Acme Brick & Supply Co. v. Department of Revenue* (1985), 133 Ill. App. 3d 757, 765, 478 N.E.2d 1380, 1386, acknowledge the purpose. The revenue set forth on the truck rental agreements did not represent property subject to sales tax. The amount listed as tax evidently related to plaintiff's sales tax when converting the trucks to rentals. Can the Department prevent the method of tax listing used by plaintiff? No direct authority is provided. However, the rule-making power of the Department, coupled with the Department's obligation, by audit or otherwise, to correctly collect taxes must be considered. Section 3—45 of the Use Tax Act provides in relevant part:

> "Retailers shall collect the tax from users by adding the tax to the selling price of tangible personal property, when sold for use, in the manner prescribed by the Department. The Department may adopt and promulgate reasonable rules and regulations for the adding of the tax by retailers to selling prices by prescribing bracket systems for the purpose of enabling the retailers to add and collect, as far as practicable, the amount of the tax.
>
> *If a seller collects use tax measured by receipts that are not subject to use tax,* or if a seller, in collecting use tax measured by receipts that are subject to tax under this Act, collects more from

the purchaser than the required amount of the use tax on the transaction, the purchaser shall have a legal right to claim a refund of that amount from the seller. If, however, that amount is not refunded to the purchaser for any reason, the seller is liable to pay that amount to the Department. This paragraph does not apply to an amount collected by the seller as use tax on receipts that are subject to tax under this Act as long as the collection is made in compliance with the tax collection brackets prescribed by the Department in its rules and regulations." (Emphasis added.) 35 ILCS 105/3—45 (West 1992).

■ Even accepting plaintiff's argument that it has not been unjustly enriched because it was recouping sales tax amounts it had already paid, it is clear that plaintiff, on its lease contracts, has collected tax "measured by receipts that are not subject to use tax." (35 ILCS 105/3—45 (West 1992).) Plaintiff's lease contracts multiplied the contract amount by 5% to come up with an amount, described as a tax, which it added to the contract amount. The contract amounts, however, were not subject to tax, and the procedure employed violates section 3—45 of the Use Tax Act. It is obvious that a proper setting forth of the amount subject to sales tax and the proper amount of the tax is necessary if adequate records for audit are to be available. Plaintiff's lease contracts do not provide correct information as to the tax owing the State. The method used by plaintiff misleads the Department auditors. The State also has an interest in purchasers actually knowing whether or not a transaction generates a tax.

We conclude the Department was justified in determining the method used by plaintiff was improper. No refund was made to the renters, so the amount was correctly collected by defendant.

The judgment of the trial court requiring defendant to refund to plaintiff the tax payment made under protest of $9,739 plus interest is therefore reversed.

Reversed.

COOK and STEIGMANN, JJ., concur.