ALVA W. BUSCH, Plaintiff-Appellant, v. JOSEPH BATES *et al.*, Defendants-Appellees.

Fifth District    No. 5—99—0638

Opinion filed July 25, 2001.

Grant J. Shostak, of Moline, Shostak & Mehan, L.L.C., of St. Louis, Missouri, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Patrick W. Carlson, Assistant Attorney General, of counsel), for appellees.

JUSTICE MAAG delivered the opinion of the court:

The plaintiff, Alva W. Busch, a crime scene technician for the Illinois State Police, filed a four-count complaint against the defendants, Joseph Bates, Greg Fernandez, and Wayne Watson, Illinois State Police officers, on September 22, 1995, alleging that the defendants had conspired to defame his reputation. The circuit court granted the defendants' motion to dismiss the plaintiff's second amended complaint. The court stated that since the defendants made the statements pursuant to their mandatory duty to cooperate in the internal investigation of the plaintiff's conduct as a crime scene technician, their statements were absolutely privileged against claims of defama-

tion so as to preclude actions for libel or slander. The circuit court dismissed the plaintiff's complaint with prejudice since both counts of the plaintiff's second amended complaint stated no alleged defamatory communication other than those statements made during and pursuant to the investigation into a disciplinary matter. The plaintiff filed a timely notice of appeal.

The relevant facts are as follows. The plaintiff claimed that while investigating a crime, he saw Bates threaten a suspect in a homicide investigation. Subsequent thereto, the plaintiff filed a complaint with the Illinois State Police regarding Bates' conduct. On November 9, 1994, Bates wrote a memorandum to Master Sergeant Dennis Higgins regarding the plaintiff's conduct during the homicide investigation of Carlos Robertson. Bates stated, "[The plaintiff] withheld information and did an inadequate job." Bates claimed that the plaintiff attempted to interview subjects at the scene of the crime and that it was not a crime scene technician's job to conduct interviews or to "sit in" on an interview. Bates alleged that the plaintiff had information that connected a homicide in Belleville with the homicide of Robertson but that for a period of time he withheld that information from the agents working on the Robertson case. Bates claimed that the plaintiff did not properly process the scene of the crime. Bates ended his memorandum to Higgins as follows: "In summary, it is my feeling that [the plaintiff] should provide agents with all articles that are of evidentiary value and allow the agents to conduct the investigation unimpeded by his interference or input unless requested. Working with [the plaintiff] is an unpleasant experience that I try to avoid whenever possible."

Fernandez wrote a memorandum to Master Sergeant Debra Landman on November 17, 1994, expressing his concern about the plaintiff's conduct in the Robertson murder investigation. Fernandez stated that on November 3, 1994, he was the case agent for the Robertson murder investigation. When he arrived at the scene of the crime, he coordinated with the Illinois State Police officers, the crime scene technicians, the Washington Park police, and the coroner. Fernandez specifically told the plaintiff that if he needed anything with regard to the crime scene, he should coordinate with Fernandez. After Fernandez observed the plaintiff placing some items inside of his van, Fernandez asked the plaintiff what evidence he had found. The plaintiff stated that he had found a .380-caliber shell casing and that he had "dug a bullet out of the floor under the victim's head." The plaintiff claimed that he found no other evidence. The plaintiff told Fernandez that he was going to the hospital to examine the victim's body. Fernandez told the plaintiff to call him after the examination. Fernandez also asked the plaintiff if he had any additional informa-

tion for the agents. The plaintiff claimed that he had no further information. Approximately one hour after the plaintiff had left the scene, Fernandez called him at the hospital, since he had not heard from him. The plaintiff informed Fernandez that the victim had been shot twice in the head and that they needed to search for another .380-caliber casing. Fernandez told the plaintiff that he would get the key if the plaintiff would meet him at the Washington Park police department. The plaintiff never came to the Washington Park police department. Later that same evening, Fernandez received a telephone call from Captain Lay, commander of the major case squad. The major case squad was investigating the shooting death of a convenience store clerk in Belleville, Illinois. Lay explained that Larry Lorsbach, Illinois State Police crime lab supervisor, contacted Lay and advised him that firearms specialists were comparing the bullet that killed Robertson to the bullet that killed the convenience store clerk. Fernandez stated that this was the first time that he realized that the two crimes were possibly connected. Fernandez then contacted the plaintiff and asked him about the bullet comparison. The plaintiff informed Fernandez that forensic scientist Jim Hall was working on it. Fernandez inquired as to why the plaintiff had not informed him that he was taking this investigative step. The plaintiff did not respond. He told Fernandez that he would contact him when he received the results. Approximately one hour later, Fernandez learned that the bullets matched. Fernandez later learned that the plaintiff had first contacted Lay with this information and then contacted Fernandez through Illinois State Police radio. Fernandez stated in his memorandum that the plaintiff had attempted to "run the investigation." Fernandez claimed that the plaintiff tried to get a picture of the suspect when he was confessing to his involvement in the murders. Fernandez and the plaintiff argued outside of the interview room. Fernandez later learned that the plaintiff was on the other side of the one-way mirror with two detectives and another crime scene technician while Fernandez and others were interviewing the suspect. The plaintiff criticized the officers that were conducting the interview. The plaintiff also told the others in the room what he was going to ask the suspect and whom he was going to interview. Fernandez claimed: "[The plaintiff] consistantly [sic] pryed [sic] in investigative matters that did not involve him. He criticized the agents['] and detectives['] work during the investigation. [The plaintiff] was a major distraction during this investigation." Fernandez claimed that they returned to the crime scene at the plaintiff's request. The plaintiff supposedly wanted to search the house with a canine unit. Fernandez noticed that the plaintiff was standing in the driveway doing nothing while the search was in progress. Fernandez

later saw the plaintiff interviewing a black female in the street. Fernandez requested that the plaintiff take additional photographs of the inside of the house, since the plaintiff's previous photographs did not depict the entire inside of the house. Fernandez closed his memorandum by noting that an investigation is a team effort and that the plaintiff had hindered this investigation.

According to Watson, Master Sergeant Mark Johnsey requested that agents provide written memoranda about their interaction with the plaintiff during the Robertson homicide investigation. Johnsey made this request after the plaintiff filed a complaint regarding the conduct of Fernandez, Dye, and Bates. Watson's memorandum is addressed to Major Lonnie Inlow, Area V commander for the Illinois State Police. Basically, Watson claimed that the plaintiff's conduct had been problematic for a number of years and that the agents had been reluctant to document the plaintiff's interference with their investigations because they worked with the plaintiff "on almost a daily basis." Watson encouraged Major Inlow to interview "all the investigative master sergeants in District 11, as well as investigative commanders of the major police departments such as Granite City, Madison County Sheriff's Office, and Belleville City." Watson stated that St. Clair County State's Attorney Bob Haida had also expressed concern about the plaintiff's conduct and that he should be interviewed. Watson claimed that the plaintiff caused conflict and that his continued presence during investigations involving District 11 investigative personnel was "detrimental to the cases." Watson opined that the plaintiff's conduct was problematic only when a case was newsworthy or highly visible.

In his complaint, the plaintiff alleged that the defendants made the aforementioned statements in retaliation for making the complaint regarding Bates' conduct. Hence, the plaintiff claimed that the defendants conspired to and did spread false rumors and allegations to the effect that the plaintiff withheld information during a homicide investigation and that the plaintiff acted improperly during that investigation. The plaintiff claimed that as a result of the defendants' improper actions, his reputation was damaged and he lost business opportunities.

The defendants filed a motion to dismiss the complaint, claiming that the complaint should be dismissed for the failure to state a cause of action. The defendants also complained that the plaintiff's complaint was barred by sovereign immunity. On February 6, 1996, the circuit court denied the defendants' motion. The circuit court granted the defendants leave to refile if the discovery process revealed insufficient facts to sustain the cause of action. The court also stated that

the defendants' motion to dismiss based on an improper forum was denied.

The defendants moved for summary judgment on May 8, 1999, and again asserted the defense of sovereign immunity. On June 7, 1999, the circuit court determined that the plaintiff failed to plead that the officers acted with malice or the intent to harm the plaintiff and, hence, that the plaintiff failed to plead that the officers acted outside of their state employment. The circuit court granted the plaintiff leave to file an amended complaint.

On July 2, 1999, the plaintiff filed his second amended complaint. The plaintiff claimed that on November 3, 1994, he was employed by the Illinois State Police. On that date, the plaintiff witnessed Bates questioning Gerald Simpson, a suspect in a criminal investigation. During the questioning, the plaintiff witnessed Bates scare, threaten, and intimidate Simpson. As a result, Simpson confessed to murdering Sharon Bushong. Simpson's murder trial resulted in a hung jury, and the case was dismissed before Simpson could be retried. According to the State's Attorney, the jury stated that the State did not prove its case, and there was no additional evidence for the second trial.

In their answer, the defendants denied that they defamed the plaintiff or that they conspired to defame the plaintiff. The defendants raised no affirmative defenses in their answer. The defendants then moved to dismiss the plaintiff's second amended complaint. The defendants argued that the complaint failed to plead malice with sufficient particularity and did not explain the oral defamatory statements that the officers allegedly made or to whom they allegedly made them.

The circuit court granted the defendants' motion to dismiss the plaintiff's second amended complaint. The court stated that an Illinois State Police directive concerning complaints and disciplinary investigations clearly outlines a procedure of investigation, administrative determination of fault, implementation of disciplinary alternatives, and review of unfavorable decisions with a right to a hearing and other due process guarantees. The circuit court determined that the aforementioned process of investigation for the purpose of determining discipline for a state employee is quasi-judicial in nature. The circuit court stated that because the defendants made the statements pursuant to their mandatory duty to cooperate in the internal investigation of the plaintiff's conduct as a crime scene technician, their statements were absolutely privileged against claims of defamation so as to preclude actions for libel or slander. Finally, the circuit court dismissed the plaintiff's complaint with prejudice since both counts of the plaintiff's second amended complaint stated no alleged

defamatory communication other than those statements made during and pursuant to the investigation into a disciplinary matter. The plaintiff appeals.

Initially, we must address the defendants' argument that the circuit court lacked jurisdiction to hear this action because it is barred by sovereign immunity. We disagree.

●1 Pursuant to article XIII, section 4, of the Illinois Constitution of 1970, "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." Ill. Const. 1970, art. XIII, § 4. The General Assembly passed an immunity act stating, "Except as provided in [the Court of Claims Act], *** the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 1998). The Court of Claims Act states as follows:

> "The [Court of Claims] shall have exclusive jurisdiction to hear and determine the following matters:
>
> * * *
>
> (d) All claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit ***." 705 ILCS 505/8 (1998).

●2 The determination of whether an action is actually against the State depends on the issues involved and the relief sought. The formal designation of the parties is of no consequence. *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990). The State's immunity from suit in circuit court is not evaded because an official or agent of the State is the named defendant. *Smith v. Jones*, 113 Ill. 2d 126, 131, 497 N.E.2d 738, 740 (1986). "Sovereign immunity affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances an action may be brought in circuit court." *Healy*, 133 Ill. 2d at 308, 549 N.E.2d at 1247.

In *Robb v. Sutton*, 147 Ill. App. 3d 710, 498 N.E.2d 267 (1986), the plaintiff, a Southern Illinois University (SIU) off-campus program coordinator in North Carolina, learned that SIU needed a program coordinator in Illinois due to a proposed program expansion at Chanute Air Force Base in Rantoul. The defendant, an assistant dean who offered him the position, assured him that SIU had submitted the programs for approval by the Illinois Board of Higher Education. Due to the assurance from the assistant dean, the plaintiff took the job, sold his home, and moved to Illinois. In reality, SIU had not submitted the programs for approval, and it later terminated the plaintiff's position. The plaintiff brought an action in circuit court for negligent and reckless misrepresentation by the defendant. The defendant moved to dismiss the complaint on the grounds that the action was in essence

one against the State and that the Court of Claims had exclusive jurisdiction over the matter. The circuit court granted the motion, and this court affirmed. This court concluded that when there are no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts, when the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment, and when the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State, then the cause of action is only nominally against the employee. *Robb*, 147 Ill. App. 3d at 716, 498 N.E.2d at 272. In those circumstances, the action is one against the State and must be brought in the Court of Claims.

•3 When determining whether an action against a state employee is, in reality, an action against the State, we must consider the following factors: (1) whether the defendant is alleged to have acted beyond the scope of his authority, (2) whether the duty that the defendant is alleged to have breached is one owed solely by virtue of state employment or is owed independently, and (3) whether the actions the defendant is alleged to have taken involve matters within his normal and official functions. *Janes v. Albergo*, 254 Ill. App. 3d 951, 958, 626 N.E.2d 1127, 1132 (1993). The plaintiff's suit in *Robb* came within the suggested guidelines; therefore, this court upheld the order dismissing the complaint.

•4 The instant case, however, does not fall within the *Robb* guidelines. In fact, the plaintiff's second amended complaint alleges that the defendants acted beyond the scope of their authority. Specifically, the plaintiff complained, "[The defendants] *maliciously, unlawfully[,] and wrongfully* conspired together[ ] and with others \*\*\* to compose, publish[,] and utter *false and malicious statements*[ ] concerning plaintiff's reputation, credibility, integrity, and ability as a crime scene technician[ ] and thereby injure[d] and damage[d] plaintiff." (Emphasis added.) Hence, since the plaintiff alleges that the defendants acted outside of the scope of their authority and in violation of the law, the circuit court properly exercised jurisdiction over this case. See *Healy*, 133 Ill. 2d at 308, 549 N.E.2d at 1247-48.

The plaintiff alleges that the circuit court erred in granting the defendants' section 2—619 (735 ILCS 5/2—619 (West 1994)) motion to dismiss. More specifically, the plaintiff claims that the defendants did not present affidavits or facts in support of their motion to dismiss in order to show that their actions were protected by absolute privilege.

•5 This court reviews *de novo* the circuit court's ruling on a section 2—619 motion for involuntary dismissal. *Aboufariss v. City of De Kalb*, 305 Ill. App. 3d 1054, 1067, 713 N.E.2d 804, 814 (1999). A

motion to dismiss pursuant to section 2—619 admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim. A section 2—619 motion should be granted by the circuit court if, after construing the documents supporting the motion in the light most favorable to the opposing party, it finds no disputed issues of fact and concludes that the affirmative matter negates the cause of action completely. *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.*, 261 Ill. App. 3d 338, 343, 633 N.E.2d 1003, 1008 (1994). The existence of an absolute privilege is such an affirmative matter warranting the dismissal of a defamation action. *Golden v. Mullen*, 295 Ill. App. 3d 865, 869, 693 N.E.2d 385, 389 (1997).

•6 A section 2—619 motion does not admit conclusions unsupported by specific allegations. *Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University*, 248 Ill. App. 3d 599, 606, 618 N.E.2d 694, 699 (1993). A motion to dismiss does not admit allegations in the complaint that conflict with facts disclosed in the exhibits. *Brock v. Anderson Road Ass'n*, 287 Ill. App. 3d 16, 21, 677 N.E.2d 985, 989 (1997). The exhibits attached to the complaint are controlling. *Brock*, 287 Ill. App. 3d at 21, 677 N.E.2d at 989.

•7 In the instant case, the circuit court based its dismissal on the defendants' absolute privilege as police officers to participate in the state police's internal investigative process pursuant to an Illinois State Police directive. We note parenthetically that the plaintiff complains that the Illinois State Police directive at issue was not in effect at the time of the underlying incident. In 1994, the version of this directive that was in effect was Illinois State Police Directive PER-30, 92-51, issued on September 15, 1992. On March 4, 1996, the state police revised the directive, and it was given directive number PER-030, 96-012. A review of both versions of the directive shows that directive number 96-012 did not change the state police reporting requirements from the previous directive number 92-51. The plaintiff objects to reliance on state police directives that were provided without a supporting affidavit. The plaintiff did not, however, raise this objection before the circuit court; hence, it is waived on appeal. See *In re Marriage of Minear*, 181 Ill. 2d 552, 564, 693 N.E.2d 379, 385 (1998). Regardless, courts may take judicial notice of an agency's rules and regulations as matters of public record. *Acme Brick & Supply Co. v. Department of Revenue*, 133 Ill. App. 3d 757, 762, 478 N.E.2d 1380, 1384 (1985).

State Police Directive PER-30, 92-51, established procedures for investigating complaints against Illinois State Police employees: "Any employee who has or is purported to have knowledge of circumstances surrounding a complaint investigation will submit an individual writ-

ten report before reporting off duty. The report will be accurate and will include all facts relating to the incident known or reported to the employee. This report will be forwarded to the employee's immediate supervisor[,] who will then convey the report to the investigator conducting the investigation." Hence, we take judicial notice of Illinois State Police Directive PER-30, 92-51—the version in effect on the dates of the alleged defamatory statements.

●8 A plaintiff proves a claim for defamation by showing that the defendant made a false statement regarding the plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by the defendant, and that the plaintiff was damaged. *Gibson v. Philip Morris, Inc.*, 292 Ill. App. 3d 267, 272, 685 N.E.2d 638, 643 (1997). The courts have found certain types of defamatory statements to be absolutely privileged so that persons will not be deterred by the threat of civil liability from making those statements. *Weber v. Cueto*, 209 Ill. App. 3d 936, 942, 568 N.E.2d 513, 516 (1991). A communication is absolutely privileged when its propagation is so much in the public interest that the publisher should speak fully and fearlessly. When an absolute privilege is granted, no cause of action for defamation lies against the person making the statement, irrespective of whether the statement was made with malice. This privilege is " 'based upon a policy which regards the ends to be gained by permitting such statements as outweighing the harm which may be done to the reputation of others.' " *Weber*, 209 Ill. App. 3d at 942, 568 N.E.2d at 516, quoting Restatement of Torts, ch. 25, Introductory Note, at 223-24 (1938). The instant case is precisely an example of such a case.

●9 The narrow class of absolutely privileged communications is practically limited to legislative and judicial proceedings and other acts of State, including communications made in the discharge of a duty under the express authority of law. *Weber*, 209 Ill. App. 3d at 942, 568 N.E.2d at 517. Section 592A of the Restatement (Second) of Torts (Restatement (Second) of Torts § 592(A), at 257 (1977)) states, "One who is required by law to publish defamatory matter is absolutely privileged to publish it." Comment *b* to that section provides, "The rule stated in this Section *** will apply whenever the one who publishes the defamatory matter acts under legal compulsion in so doing." Restatement (Second) of Torts § 592(A), Comment *b*, at 258 (1977). *Weber*, 209 Ill. App. 3d at 942, 568 N.E.2d at 517. For example, in *Weber*, a State's Attorney's office employee brought a defamation action against a private attorney due to the fact that the attorney sent a letter to the chief circuit judge, the county board, and the Attorney Registration and Disciplinary Commission claiming that the employee and the State's Attorney had misused funds. When this court

determined that the defendant's statements were absolutely privileged, its greatest concern was "the mandatory nature of the [defendant's] duty to report." *Weber*, 209 Ill. App. 3d at 946, 568 N.E.2d at 519. This court noted that because the defendant was an attorney, he had an absolute duty to report any misconduct and the failure to make the report could result in professional discipline. See 187 Ill. 2d R. 1—103(a). The court was also aware, however, that if an attorney complies with the rule, he or she may have to defend a suit for defamation. After recognizing the legal obligation that the defendant faced and finding it irrelevant that the obligation was created by rule rather than by statute, this court granted the defendant an absolute privilege for the defamatory statements he was legally obligated to make.

●10 The case at bar is much like the *Weber* decision in the respect that the police officers, as Illinois State Police employees, were obligated to report what they perceived as the plaintiff's misconduct. Illinois State Police Directive PER-30, 92-51, established an internal investigative procedure within the Illinois State Police concerning complaint and disciplinary investigations. Illinois State Police Directive PER-30, 92-51, states that the police officers must report misconduct by fellow officers. "[F]ailure to cooperate with a properly conducted internal investigation can result in discipline and even separation from the department." Illinois State Police Directive PER-30, 92-51, par. V(c).

Because the officers in the instant case faced the same conflicting obligations as the attorney in the *Weber* decision—either fail to report and face disciplinary action or report perceived official misconduct and face a defamation action—we affirm the circuit court's finding that the defendants' statements that they were legally obligated to make were absolutely privileged. Due to our determination of the foregoing matters, we need not address the plaintiff's remaining contentions of error.

Affirmed.

GOLDENHERSH and HOPKINS, JJ., concur.