SECOND DIVISION
NOVEMBER 18, 2008

1-07-1339

| | | |
|---|---|---|
| MARGARET CORTRIGHT, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | |
| JAYNE DOYLE, CAROLYN BAILEY, and STEVEN | ) | |
| MINTER, | ) | |
| Defendants-Appellees | ) | No. 01 L 2886 |
| | ) | |
| (The Illinois Department of Children and Family Services | ) | |
| and Rocco J. Claps, Director of the Department of Human | ) | |
| Rights, an Agency of the State of Illinois, | ) | Honorable |
| | ) | Martin S. Agran, |
| Defendants). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

Plaintiff Margaret Cortright appeals from the circuit court's November 21, 2006 order dismissing with prejudice her intentional tort claims (counts I, II, and III) and reaffirming the dismissal of her discrimination claims (counts IV, V and VI) under a previous ruling. Cortright v. Doyle, No. 01 L 02886 (Cir. Ct. Cook Co.). On appeal, the plaintiff alleged that: (1) the intentional tort claims were not barred by the doctrine of sovereign immunity; (2) the intentional tort claims were not preempted by the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq*. (West 1998)); (3) the defendants' actions were not subject to absolute immunity; and (4) she has adequately pleaded a claim for all of the intentional torts. For the following reasons, we affirm.

BACKGROUND

Plaintiff Margaret Cortright suffers from a degenerative hearing condition called Meniere's disease and other related conditions of tinnitus and vertigo. Her symptoms include hearing loss, ringing in the ears and dizziness—all of which are exacerbated by stress but can be controlled with prescription medication and hearing aids. However, the prescription medication has a tendency to cause drowsiness.

The plaintiff was an employee of the Illinois Department of Children and Family Services (DCFS) for over 20 years until her retirement in April 2001. From 1994 until her retirement, the plaintiff was a public service administrator at DCFS whose responsibilities included supervising 12 employees.

Defendants Jayne Doyle, Carolyn Bailey and Steven Minter (collectively the supervisors) worked at DCFS during the relevant periods of the plaintiff's tenure. In 1997, Doyle became the plaintiff's direct supervisor, and subsequently in 1998, Bailey and Minter also gained supervisory positions and authority over the plaintiff. The supervisors were aware of the plaintiff's medical conditions and the side effects of her medication.

The plaintiff had consistently received "Outstanding/Exceptional" ratings on her annual performance evaluations up until March 1998, when Doyle gave her a lesser rating of "Accomplished/Satisfactory" despite, allegedly, that the quality of the plaintiff's performance had remained the same. In April 1999, Minter rated the plaintiff's overall performance as "Unacceptable" and did not give any particular category a rating higher than "Acceptable"—ratings that were supposedly unprecedented in the plaintiff's evaluations during her approximately 20 years

2

of service at DCFS. The overall rating of "Unacceptable" disqualified the plaintiff from receiving a raise at that time.

The plaintiff's most recently amended complaint alleged that beginning in 1998, the supervisors yelled at and demeaned the plaintiff both in private and in the presence of co-workers. They allegedly called her "stupid" or "stupidvisor" regularly and reprimanded the plaintiff for complaining of the perceived mistreatment. The plaintiff claimed that the supervisors falsely reprimanded her for incompetence, inability to understand management directives and inability to comprehend what was said at meetings. Allegedly, the supervisors set unreasonable task deadlines and chastised the plaintiff when she failed to meet them. Bailey also allegedly threatened the plaintiff with progressive discipline and accused her of having poor judgment. The supervisors issued formal reprimands and an eight-day suspension to her for sleeping at meetings, which the plaintiff denied doing. The complaint also stated that Doyle issued a memorandum to the plaintiff threatening further discipline and possible termination for her continued unacceptable job performance.

The stresses of these events allegedly caused emotional distress and further deterioration of the plaintiff's medical condition.

This case has a long and complicated procedural history. The plaintiff, acting *pro se*, attempted to file a charge of discrimination with the Illinois Department of Human Rights (IDHR) in 1998 which IDHR refused to accept. In 1999, the plaintiff filed a charge of discrimination and retaliation with the federal Equal Employment Opportunity Commission (EEOC) and subsequently received a notice of right to sue from the EEOC.

In January 2000, the plaintiff filed a complaint in the Illinois court of claims against the supervisors and DCFS alleging age and disability discrimination. Cortright v. Department of Children & Family Services, No. 00 CC 2519. The court of claims dismissed the federal claims and claims against the supervisors in their individual capacities for want of jurisdiction in its February 2001 order. To the extent the claims were based on the Illinois Human Rights Act (Human Rights Act) (775 ILCS 5/1–101 *et seq.* (West 1998)) and the public official immunity defense, the court of claims allowed the claims to stand pending further oral argument. The court of claims decided these remaining issues in a later order dated May 10, 2001, which denied DCFS' motion to dismiss for lack of jurisdiction and, instead, placed the claims against DCFS under "general continuance" on the ground that the plaintiff had not exhausted her remedies before the IDHR.

In March 2001, the plaintiff commenced this action against the supervisors in the circuit court of Cook County alleging disability discrimination under the Human Rights Act and Americans with Disability Act of 1990 (ADA) (42 U.S.C. §12101 *et seq.* (2000)) (count I), age discrimination under the Human Rights Act and Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. §621 *et seq.* (2000)) (count II), defamation (count III), retaliatory practices (count IV) and intentional infliction of emotional distress (IIED) (count V).

The plaintiff's first amended complaint, filed on May 24, 2001, added DCFS as a defendant and a *mandamus* claim against the IDHR director seeking an order for the director to accept the plaintiff's charge of discrimination (count VI). On January 25, 2002, the circuit court granted the defendants' motion to dismiss the plaintiff's first amended complaint without prejudice stating that jurisdiction is proper in the court of claims. The *mandamus* claim (count VI) was then transferred

to the chancery division of the circuit court for further consideration. The plaintiff filed a motion to reconsider the dismissal of counts III and V of the first amended complaint on April 9, 2003, the hearing for which was continued until January 5, 2004, when the circuit court found it had jurisdiction over the supervisors. During this interim, the plaintiff filed a second amended complaint on July 23, 2003, adding another *mandamus* claim (count VII) against the IDHR director to compel him to accept the plaintiff's charges of discrimination as pertaining to a worksharing agreement between the EEOC and the IDHR.

A third amended complaint was filed on January 6, 2004, by the plaintiff in which she added an eighth claim–interference with prospective economic advantage and contractual relationship (count VIII)–against the supervisors and tried to point to the worksharing agreement between IDHR and EEOC to support her *mandamus* claim (count VII) against the IDHR director. The circuit court's order on November 21, 2005, dismissed, with prejudice, claims against the supervisors based on a lack of jurisdiction to hear the intentional tort claims.

The plaintiff attempted to address the items the court found deficient in the third amended complaint by filing a fourth amended complaint (complaint) in March 2006. No new parties or causes of action were added to the complaint. Instead, the plaintiff simply attached the plaintiff's job evaluations to the complaint and renumbered the counts.

The complaint alleged defamation (count I), IIED (count II) and interference with prospective economic advantage and contractual relationship (count III) against Doyle, Bailey and Minter. Disability discrimination (count IV), age discrimination (count V) and retaliation (count VI) against DCFS were alleged. The two *mandamus* claims (counts VII, VIII) against the IDHR director also

remained.

The circuit court's final judgment on November 21, 2006, granted the defendants' motion to dismiss the intentional tort claims against the supervisors (counts I, II, III of the complaint), holding that the claims were barred by sovereign immunity and preempted by the Human Rights Act. It reaffirmed the dismissal of the disability discrimination, age discrimination and retaliation claims (counts IV, V and VI) under a previous ruling.

On April 17, 2007, the circuit court dismissed with prejudice the claims against IDHR and DCFS (counts VII and VIII) pursuant to settlement and that is not at issue in this appeal.

The plaintiff now appeals dismissal of counts I, II and III of the complaint.

ANALYSIS

This court has jurisdiction to hear the appeal. We review *de novo* the circuit court's November 21, 2006 decision granting the defendants' motion to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2006)). Wolfe v. Wolf, 375 Ill. App. 3d 702, 705, 874 N.E.2d 582, 584 (2007). A section 2-619 motion for involuntary dismissal asserts affirmative matters–such as defenses of preemption, sovereign immunity and absolute immunity, in this case–that avoid or defeat the claim. Wolfe, 375 Ill. App. 3d at 705, 874 N.E.2d at 584. In reviewing a section 2-619 dismissal, we construe all pleadings and supporting documents in a light most favorable to the plaintiff, the nonmoving party. Landheer v. Landheer, 383 Ill. App. 3d 317, 320, 891 N.E.2d. 975, 978 (2008).

We determine the following three issues: whether (1) the court below erred in dismissing the intentional tort claims (counts I, II and III) of the complaint on the basis of sovereign immunity; (2)

the court below erred in dismissing the intentional tort claims (counts I, II and III) of the complaint on the basis of preemption by the Human Rights Act; and (3) the intentional tort claims (counts I, II and III) were barred by absolute immunity.

We first address the issue of sovereign immunity. The defendants argue that sovereign immunity applied to bar the plaintiff's intentional tort claims from being heard in the circuit court.

The Illinois Constitution of 1970 abolished sovereign immunity "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, §4. Pursuant to this express authority, the legislature enacted the State Lawsuit Immunity Act, which states that the State of Illinois shall not be made a defendant or party in any court except as provided in the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq*. (West 2006)) and the Court of Claims Act (705 IlLCS 505/1 *et seq* (West 2006)). Hence, the Court of Claims Act provides that the court of claims has exclusive jurisdiction to hear certain matters, including "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." 705 ILCS 505/8(d) (West 2006).

We must examine whether an action is one against the State to determine whether it was properly barred by sovereign immunity. Determining state action depends on the issues raised and the relief sought in the action, rather than on whether the State is named as a party. Brandon v. Bonell, 368 Ill. App. 3d 492, 858 N.E.2d 465 (2006); Kawaguchi v. Gainer, 361 Ill. App. 3d 229, 243, 835 N.E.2d 435, 447 (2005); Jinkins v. Lee, 209 Ill. 2d 320, 330, 807 N.E.2d 411, 418 (2004). An action brought nominally against a State employee in his individual capacity where a judgment

for the plaintiff could operate to control the actions of the State or subject it to liability is deemed to be a claim against the State. Brandon, 368 Ill. App. 3d at 504, 858 N.E.2d at 479. Treating such cases as ones against the State prevents plaintiffs from circumventing sovereign immunity by only naming as defendants state employees in their individual capacity. Brandon, 368 Ill. App. 3d at 504, 858 N.E.2d at 479.

The supreme court has established a three-part test to determine whether an action against state employees is actually one against the State. The test is summarized as follows: (1) there are no allegations that an employee or agent of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed by the employee independently of his state employment; and (3) the complained-of actions involve matters ordinarily within that employee's normal and official functions. Jinkins, 209 Ill. 2d at 330, 807 N.E.2d at 418, citing Healy v. Vaupel, 133 Ill. 2d 295, 309, 549 N.E.2d 1240, 1247 (1990).

Applying the three-part test, we find that the plaintiff's intentional tort claims are ones against the State and, thus, barred from the circuit court by sovereign immunity.

For the first prong, the plaintiff argues that the supervisors' conduct was theirs alone and not an act of the State. She argues that the alleged malicious conduct was enough to place the supervisors' actions beyond the scope of their authority so as to lose sovereign immunity protection. In support, the plaintiff relies on Fritz v. Johnston, 209 Ill. 2d 302, 807 N.E.2d 461 (2004), Hoffman v. Yack, 57 Ill. App. 3d 744, 373 N.E.2d 486 (1978), Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University, 248 Ill. App. 3d 599, 618 N.E.2d 694 (1993), and Busch v. Bates, 323 Ill. App. 3d 823, 753 N.E.2d 1184 (2001).

The defendants, on the other hand, contend that the supervisors did not act beyond the scope of their authority through wrongful acts because supervisors routinely prepare performance evaluations, issue discipline, criticize subordinates' work, and set deadlines for completing tasks–all of which constitute a significant portion of the supervisors' job duties. They argue that malicious conduct is outside the scope of a state employee's authority only when there are specific facts supporting the allegations, which they argue the plaintiff failed to provide in her complaint.

In Fritz, the plaintiff alleged civil conspiracy by four defendants to force him out of his job and claimed he suffered mental anguish and a "derogation of his name and reputation" as a result of the defendants' actions. Fritz, 209 Ill. 2d at 306, 807 N.E.2d at 464. One of the defendants, the plaintiff alleged, contacted the police and falsely accused the plaintiff of threatening assault on the defendant's person and property. Fritz, 209 Ill. 2d at 305-06, 807 N.E.2d at 464. He also alleged intentional interference with employment and economic gains. Fritz, 209 Ill. 2d at 306, 807 N.E.2d at 464. The Fritz defendants moved to dismiss the claims based on protection by sovereign immunity, which was granted by the circuit court and affirmed by the appellate court. Fritz, 209 Ill. 2d at 307-08, 807 N.E.2d at 464-65. The supreme court reversed, holding that defendant Johnston's alleged conduct violated a criminal law and thus, sovereign immunity did not apply. Fritz, 209 Ill. 2d at 313, 807 N.E.2d at 468. It further reasoned that unlike Wozniak v. Conry, 288 Ill. App. 3d 129, 679 N.E.2d 1255 (1997), which involved a lawsuit against supervisors who made "work-related statements" within the context of their supervisory roles, the source of the duty some of the Fritz defendants purportedly violated was a criminal statute applicable to both state and nonstate employees. Fritz, 209 Ill. 2d at 313-14, 807 N.E.2d at 468-69, citing Wozniak v. Conry, 288 Ill.

9

App. 3d 129, 679 N.E.2d 1255 (1997). The supreme court further held that the defendants who did not violate this criminal statute were still not protected by sovereign immunity because they allegedly threatened to launch a police investigation based on those false claims, as part of the conspiracy to force the plaintiff out of his position. Fritz, 209 Ill. 2d at 315, 807 N.E.2d at 479.

In the case at bar, the plaintiff does not allege violations of any criminal statute. While the plaintiff alleges that the "[d]efendants deliberately and maliciously engaged in [a] campaign of defamatory conduct and harassment in order to, *inter alia*, drive [p]laintiff from her job," we do not find any link to the violation of a criminal statute which would remove the case from the protection of sovereign immunity. The plaintiff also alleges that Bailey engaged in further harassment by sending the plaintiff a posting for an alternate job for less pay. However, unlike the Fritz defendants who threatened to launch a police investigation based on false claims made to the police, this conduct was not alleged to have been done as a result of some violation of a criminal statute in furtherance of a conspiracy. Therefore, we find that the facts in the case at bar are more like those in Wozniak than in Fritz, and that the statements made by the supervisors are work-related statements within the scope of their authority as supervisors. Wozniak, 288 Ill. App. 3d at 133-34, 679 N.E.2d at 1258-59 ("when a supervisor for a state department or entity is sued by an employee for statements regarding the employee's work-related conduct and pending personnel decisions, the suit necessarily threatens to control the actions of the state"; holding that Conry's conduct goes to the *core* of the State's ability to control its own affairs). The Wozniak court also held that the relevant inquiry to determine scope of authority is "whether the supervisor would be acting within the scope of his duties by making truthful statements of the general type alleged." Wozniak, 288 Ill.

App. 3d at 133-34, 679 N.E.2d at 1258. Here, if the general type of alleged statements made by the supervisors about the plaintiff's performance were true, the supervisors would be acting within the scope of their authority as supervisors to evaluate and comment upon the plaintiff's employee performance.

The plaintiff's reliance on Hoffman is also misplaced. In Hoffman, a tenured instructor at a state university brought suit against his supervisor who allegedly made false accusations as to the instructor's professional competency, aberrational sexual conduct and lack of integrity. Hoffman, 57 Ill. App. 3d at 746, 373 N.E.2d at 488. The Hoffman court held that the suit was not against the State because judgment for the plaintiff would not affect, control or subject the State to liability. Hoffman, 57 Ill. App. 3d at 748, 373 N.E.2d at 490. See also Wozniak, 288 Ill. App. 3d at 135, 679 N.E.2d at 1259 (which clarified Hoffman's holding that "a suit was not against the state when the defendant supervisor made personal accusations that did not relate solely to the employee's job").

In the case at bar, the plaintiff alleges that the supervisors falsely accused her of sleeping at meetings, underperforming, having poor judgment and being incompetent–all accusations that related solely to the plaintiff's job. The plaintiff failed to plead any false personal accusations made by the supervisors that did not relate solely to her job.

Further, the plaintiff failed to allege any specific facts to support her allegations of malice by the supervisors which, if proven, would show malicious conduct. Management Ass'n, 248 Ill. App. 3d at 617, 618 N.E.2d at 706. The plaintiff made conclusory statements in her complaint that the supervisors were malicious and deliberate in allegedly harassing her with their false accusations but failed to allege any specific facts in her complaint that showed the supervisors harbored personal

11

animosity toward her or acted for any purpose other than what they perceived to be the best interests of DCFS. Management Ass'n, 248 Ill. App. 3d at 617, 618 N.E.2d at 706, citing Nikelly v. Stubing, 204 Ill. App. 3d 870, 562 N.E.2d 360 (1990). Here, the plaintiff failed to demonstrate that the supervisors were not acting in what they perceived to be the best interests of DCFS in evaluating the plaintiff's job performance and setting deadlines which the plaintiff believed were unreasonable. Although the supervisors' behavior, if true, is unpalatable, absent a showing of specific facts that the supervisors acted for any purpose other than what they perceived to be the best interests of DCFS, their actions were not beyond the scope of authority. Similarly, in Busch v. Bates, 323 Ill. App. 3d 823, 831, 753 N.E.2d 1184, 1190 (2001), the court held that sovereign immunity was inapplicable because the Busch plaintiff had alleged that the defendants acted in violation of the law. The plaintiff in the case at bar failed to allege the supervisors' conduct violated any law, and thus, sovereign immunity is not precluded. Because the plaintiff has not appealed the circuit court's dismissal of her age and disability discrimination claims, we will not consider the plaintiff as having alleged any violation of law based on her employment discrimination claims.

We hold that the supervisors' alleged conduct did not exceed the scope of their authority and the first prong of the test is satisfied.

For the second prong, the plaintiff argues under the "source of duty test" that because defamation, IIED and interference with prospective economic advantage and contractual relationship are common law duties applicable to all citizens–not only state employees–these duties were owed by the supervisors independently of their state employment. Currie v. Lao, 148 Ill. 2d 151, 159, 592 N.E.2d 977, 980 (1992) ("where the employee is charged with breaching a duty imposed on him

*independently* of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court" (emphasis in original)).

The supervisors, however, contended that their responsibilities to prepare performance evaluations for the plaintiff, discipline and criticize the plaintiff, and set deadlines for her tasks were solely in their capacities as DCFS supervisors. Thus, any duties allegedly breached when performing these functions in their capacities as supervisors were not owed independently of their state employment.

In Currie, the Illinois Supreme Court held that sovereign immunity did not bar jurisdiction in the circuit court to hear a negligence claim against a state trooper whose patrol car collided with the plaintiff's truck and injured the plaintiff. Currie, 148 Ill. 2d at 151, 592 N.E.2d at 977. Using the source-of- duty rule, the court reasoned that the duty the trooper allegedly breached arose as a result of his status as a driver on a public road rather than a result of his employment as state trooper. Currie, 148 Ill. 2d at 161-62, 592 N.E.2d at 981. Such negligence was a breach of duties that every driver owes to every other driver, regardless of state employment.[1] Currie, 148 Ill. 2d at 160, 592 N.E.2d at 981. The supreme court, however, noted an exception to sovereign immunity when the duty is unique to state employment such that a lawsuit challenging the conduct could affect the actions and policies of the State. Currie, 148 Ill. 2d at 160, 592 N.E.2d at 981; see also Loman v. Freeman, 229 Ill. 2d 104, 123, 890 N.E.2d 446, 459 (2008); Wozniak, 288 Ill. App. 3d at 133, 679

---

[1] State-employed professionals, such as public defenders and doctors, are not protected by sovereign immunity when they breach a professional duty owed by every member of that profession. Brandon, 368 Ill. App. 3d at 506, 858 N.E.2d at 480, citing Jinkins, 209 Ill. 2d at 333, 807 N.E.2d at 419-20.

N.E.2d at 1258; <u>Brandon</u>, 368 Ill. App. 3d at 506, 858 N.E.2d at 481.

The plaintiff in this case argues that because common law duties are applicable to all citizens, the supervisors' alleged conduct was owed independently of their state employment. The <u>Wozniak</u> court rejected a similar argument by a professor who asserted that the department head of the university had a general duty not to interfere with the contractual relationships of others. <u>Wozniak</u>, 288 Ill. App. 3d at 133, 679 N.E.2d at 1258. Instead, it held that to allow suit against the defendant in his individual capacity would limit his ability to engage in lawful activity on behalf of the university, such as communicating, allocating tasks and making personnel or employment decisions. <u>Wozniak</u>, 288 Ill. App. 3d at 134, 679 N.E.2d at 1259.

In her reply brief, the plaintiff here argued that <u>Wozniak</u> is in conflict with supreme court precedent in <u>Fritz</u> because it made three critical errors. We find that the plaintiff's arguments are meritless because <u>Wozniak</u> is factually distinguishable from <u>Fritz</u>. As stated by the supreme court in <u>Fritz</u>:

> "We need not express an opinion on whether <u>Wozniak</u> reached the correct result on its facts, because the case is distinguishable. As the appellate court dissent noted in this case, <u>Wozniak</u> involved a state employee in a supervisory role who merely made 'work-related statements' within the context of that supervisory role. The instant case, by contrast, involves allegedly false reports to an independent agency–the State Police–in direct violation of criminal law. See 720 ILCS 5/26-1(a)(4) (West 1998). <u>Wozniak</u>

14

itself acknowledged that a statutory violation would change the legal calculus ***." Fritz, 209 Ill. 2d at 313, 807 N.E.2d at 468.

We reject the plaintiff's argument that the supervisors' conduct arose independently of their state employment. Supervisors are hired to supervise. Their alleged conduct, no matter how misguided, was work-related and unique to their capacity as supervisors. Their conduct included communicating, setting deadlines, evaluating and making personnel and other employment decisions on behalf of DCFS. A suit challenging the alleged conduct could also affect state policies and control state actions because a judgment for the plaintiff would directly influence the supervisors' ability as state employees to handle departmental personnel issues. Therefore, we hold that the duty alleged to have been breached was not owed by the supervisors independently of their employment at DCFS.

Finally, the third prong requires that we look at whether the complained-of actions involve matters ordinarily within that employee's normal and official functions. Jinkins, 209 Ill. 2d at 330, 807 N.E.2d at 418, quoting Healy v. Vaupel, 133 Ill. 2d 295, 309, 549 N.E.2d 1240, 1247 (1990). The plaintiff argues that the third prong of the test is not satisfied because the supervisors were "not performing a uniquely governmental function" because the same functions occur in private offices and business. She relied on Currie's holding that the trooper, at the time of the car collision, was not performing a uniquely governmental function. Currie, 148 Ill. 2d at 151, 592 N.E.2d at 977.

We find that the plaintiff's reliance on Currie for this prong of the test is inapposite. The Currie court called into doubt whether the trooper was even responding to a dispatch call at the time of the collision or engaged in personal business in finding that he was not performing a uniquely

15

governmental function at the time of the collision. Currie, 148 Ill. 2d at 162, 592 N.E.2d at 981.

The defendants contend that the issue of whether a function is uniquely governmental is relevant solely to the second prong as it relates to an exception to the source of duty rule. Currie, 148 Ill. 2d at 160, 592 N.E.2d at 981. Accordingly, we only need to look at whether the actions complained of involve matters ordinarily within the supervisors' normal and official functions as employees.

We hold that evaluating, disciplining, and setting assignment deadlines were all within the normal and official functions of the supervisors as state employees. Therefore, the third prong of the test is satisfied and the suit against the supervisors is a suit against the state.

CONCLUSION

Because we resolve the case on the basis of sovereign immunity we need not address the additional issues of preemption by the Human Rights Act and absolute immunity. We hold that the plaintiff's intentional tort claims are barred by sovereign immunity and, thus, the circuit court lacked jurisdiction to hear this case.

Affirmed.

KARNEZIS, P.J., and QUINN, J., concur.