# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Carmody v. Thompson*, 2012 IL App (4th) 120202

---

| | |
|---|---|
| Appellate Court Caption | KEVIN CARMODY, Plaintiff-Appellant, v. CHARLES THOMPSON, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-12-0202 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | October 3, 2012<br><br>November 6, 2012<br>October 3, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's complaint for defamation *per se*, false light, and tortious interference with contractual relations arising from his termination from a state university was properly dismissed on the ground that the trial court had no jurisdiction due to sovereign immunity and the action should have been brought in the Court of Claims, since defendant named the person who signed his termination letter as defendant, but his claim was really against the State. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 11-L-172; the Hon. Michael Q. Jones, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Charles Lee Mudd, Jr., Stephanie M. Snyder, and Mark A. Petrolis (argued), all of Mudd Law Offices, of Chicago, for appellant.

William J. Brinkmann (argued), of Thomas, Mamer & Haughey, LLP, of Champaign, for appellee.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Appleton and McCullough concurred in the judgment and opinion.

**OPINION**

¶ 1    In September 2011, plaintiff, Kevin Carmody, filed a complaint against defendant, Charles Thompson, for defamation *per se*, false light, and tortious interference with contractual relations following plaintiff's termination from the University of Illinois (University).

¶ 2    In November 2011, defendant filed a motion to dismiss pursuant to section 2-619(a)(1) of the of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619(a)(1) (West 2010)), arguing the cause should instead be heard in the Court of Claims because defendant's actions were taken pursuant to his University employment.

¶ 3    In February 2012, the trial court granted defendant's motion to dismiss.

¶ 4    Plaintiff appeals, arguing the trial court erred (1) in granting defendant's motion to dismiss and, in the alternative, (2) denying his request for leave to amend his complaint. We affirm.

¶ 5                              I. BACKGROUND

¶ 6    Prior to his termination, plaintiff worked for the University as the manager of systems services in the college of engineering. During the time plaintiff worked for the University, defendant worked as the assistant dean and director of the engineering information and technology (IT) shared services department in the college of engineering.

¶ 7    In 2009, plaintiff filed an unrelated civil lawsuit against David Goldberg involving an alleged assault. Plaintiff maintains during the pendency of the Goldberg litigation, he "found" a stack of papers in the Champaign News Gazette box at his home. Those papers included copies of emails relevant to his lawsuit against Goldberg. The emails were sent to and received from Deborah Thurston, a University employee. Plaintiff delivered the emails to the attorney representing him in his litigation against Goldberg. Plaintiff's attorney later used those emails as an exhibit (Exhibit A) in the Goldberg litigation.

¶ 8        Thereafter, the University charged plaintiff with improper use of and/or access to electronic communications of a University employee. The University investigated plaintiff's actions with regard to the emails. On September 7, 2010, the University issued a report containing a summary of the investigation and its findings. As a result of the report, plaintiff was sent a termination letter signed by defendant and dated September 23, 2010. The letter indicated plaintiff was given the opportunity to discuss the allegations, but he declined to answer questions related to the charges. That letter also stated the following:

> "The University finds that you did in fact engage in the alleged misconduct, violating the *University Code of Conduct* and the *Policy on Appropriate Use of Computers and Network Systems at the University of Illinois at Urbana-Champaign*. In particular, we find that you attempted to use the substance of the email messages in 'Group Exhibit A' for non-University related purposes and without permission. It is more probable than not that the documents contained in 'Group Exhibit A' were obtained from Deborah Thurston's computer. Furthermore, it is more probable than not that you obtained the documents in 'Group Exhibit A' through improper access. As an [IT] professional, you did not immediately report the breach of security to your supervisor when you came into possession of the documents constituting 'Group Exhibit A'.

> As you know, the protection and security of our information technology equipment and data are of utmost concern for the University. Given your position's responsibilities to ensure that security and because of your actions, we can no longer trust you to carry out the responsibilities of your position. As such, you cannot perform the essential functions of your position. Therefore, your employment is hereby terminated, effective today, September 23, 2010."

¶ 9        On September 22, 2011, plaintiff filed a complaint against defendant for defamation *per se*, false light, and tortious interference with contractual relations based upon the false statements he argues defendant made in the termination letter. Plaintiff's complaint alleged, *inter alia*, defendant "intentionally and/or recklessly made false statements accusing [p]laintiff of obtaining documents, electronic mail, from Deborah Thurston's computer through improper access." Plaintiff alleged the report claimed "[a]ccording to senior IT professionals, the [emails] were obtained only from Thurston's computer." However, plaintiff alleged that, as a participant in the investigation, defendant knew no senior IT professional stated the emails came only from Thurston's computer. The report also claimed the recommendation for plaintiff's termination was based upon an "analysis of the [emails] by senior [IT] professionals at the University." However, plaintiff alleged defendant participated in the investigation and knew that no forensic analysis by IT professionals had taken place.

¶ 10       According to plaintiff's complaint, on September 23, 2010, defendant "published" the termination letter containing statements from the report, which defendant knew to be false, to plaintiff's personnel file and Elyne Cole, the associate provost for the human resources department. Plaintiff alleged defendant did this because Goldberg was a friend and colleague of defendant, and "upon information and belief" "[d]efendant enjoyed a financial relationship with Mr. Goldberg," and "had a connection to a grant administered by Mr. Goldberg."

¶ 11    On November 23, 2011, defendant filed a motion to dismiss pursuant to section 2-619(a)(1) of the Procedure Code (735 ILCS 5/2-619(a)(1) (West 2010)). The motion urged dismissal of plaintiff's complaint for lack of subject-matter jurisdiction. According to defendant, plaintiff's complaint should have been filed in the Court of Claims because in alleging defendant's actions were taken pursuant to his job as assistant dean and director of the college of engineering, he was really alleging a cause of action against the University.

¶ 12    Following a February 6, 2012, hearing, the trial court granted defendant's motion to dismiss with prejudice. The court found, *inter alia*, plaintiff's complaint

"clearly does not contain sufficient facts to remove this [cause] from what it really is, which is an action against a state body that [plaintiff] believes wrongfully fired him. I don't think you can task this in a personal vein with the–what I agree are–conclusory allegations that [plaintiff] has, had [*sic*] made here. This is something that will bind the State of Illinois because I believe it's alleging that the [S]tate, through its agent, [defendant], wrongfully terminated [plaintiff] and the allegations of a relationship between–on information and belief between–[defendant] and Mr. Goldberg and then the lawsuit involving Mr. Goldberg, I believe, are factually inadequate to remove this from what it really is.

    I believe that clearly what we have here, however it is couched, is an action against the [S]tate and that there are inadequate facts alleged that transform this from anything other than [defendant] doing what he thought was best for his employer. Whether that's right or wrong, [p]laintiff has every right to have, have his grievances heard ultimately, but he must do so in the Court of Claims. *** Cause dismissed with prejudice."

¶ 13    After the trial court made its ruling, plaintiff's attorney asked the court if he could have leave to amend the complaint to "cure" the factual defects the court referred to in its ruling. The court denied plaintiff's request.

¶ 14    This appeal followed.


¶ 15                                    II. ANALYSIS

¶ 16    On appeal, plaintiff argues the trial court erred in granting defendant's motion to dismiss his complaint. In the alternative, plaintiff contends the court erred when it denied him leave to amend his complaint. We note defendant's section 2-619(a)(1) motion to dismiss plaintiff's complaint does not attack the sufficiency of the underlying defamation claim nor the allegedly defamatory nature of the termination letter as a section 2-615 motion to dismiss might do. Accordingly, we will not address the merits of plaintiff's claims as alleged.


¶ 17                                A. Standard of Review

¶ 18    Section 2-619(a)(1) of the Procedure Code (735 ILCS 5/2-619(a)(1) (West 2010)) provides for dismissal of a cause of action due to the trial court's lack of subject-matter jurisdiction. *Siakpere v. City of Chicago*, 374 Ill. App. 3d 1079, 1081, 872 N.E.2d 495, 497 (2007). With a section 2-619 motion to dismiss, the movant admits the legal sufficiency of the plaintiff's complaint but raises an affirmative defense or other matter that avoids or

defeats the plaintiff's claim. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59, 857 N.E.2d 229, 236 (2006). "In ruling on such a motion, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party." *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 141, 847 N.E.2d 99, 103 (2006). A section 2-619 motion presents a question of law, and thus our review of the trial court's ruling on the motion is *de novo*. *Czarobski v. Lata*, 227 Ill. 2d 364, 369, 882 N.E.2d 536, 539 (2008).

¶ 19                                    B. Sovereign Immunity

¶ 20      "The Illinois Constitution of 1970 abolished the doctrine of sovereign immunity '[e]xcept as the General Assembly may provide by law.' " *PHL, Inc. v. Pullman Bank & Trust Co.*, 216 Ill. 2d 250, 259-60, 836 N.E.2d 351, 356 (2005) (quoting Ill. Const. 1970, art. XIII, § 4). Under this authority, the legislature created the State Lawsuit Immunity Act (Immunity Act) (745 ILCS 5/0.01 to 1.5 (West 2010)). *PHL*, 216 Ill. 2d at 260, 836 N.E.2d at 356. Section 1 of the Immunity Act (745 ILCS 5/1 (West 2010)) prohibits the State of Illinois from being a party to a lawsuit except for the enumerated exceptions, one of which is the Court of Claims Act (705 ILCS 505/1 to 29 (West 2010)). The Court of Claims Act establishes the Court of Claims as the forum for claims against the State and provides, *inter alia*, the " 'court shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit.' " *Loman v. Freeman*, 229 Ill. 2d 104, 112, 890 N.E.2d 446, 453 (2008) (quoting 705 ILCS 505/8(d) (West 2004)). We note our public universities are considered "the State" for the purposes of the Immunity Act and Court of Claims Act. See *Joseph Construction Co. v. Board of Trustees of Governors State University*, 2012 IL App (3d) 110379, ¶ 32.

¶ 21      The determination of whether an action is one against the State does not depend "on the formal identification of the parties but rather on the issues involved and the relief sought." *Healy v. Vaupel*, 133 Ill. 2d 295, 308, 549 N.E.2d 1240, 1247 (1990). Thus, sovereign immunity cannot be avoided " 'by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested.' " *Healy*, 133 Ill. 2d at 308, 549 N.E.2d at 1247 (quoting *Sass v. Kramer*, 72 Ill. 2d 485, 491, 381 N.E.2d 975, 977 (1978)). However, when the suit sufficiently alleges the State's agent acted in violation of statutory or constitutional law or in excess of his or her authority, the action is not against the State and may be brought in the trial court. *Healy*, 133 Ill. 2d at 308, 549 N.E.2d at 1247. However, "[a]n action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability." *Currie v. Lao*, 148 Ill. 2d 151, 158, 592 N.E.2d 977, 980 (1992).

¶ 22      Our supreme court has adopted a three-factor test to determine whether an action against a state employee is actually an action against the State. *Healy*, 133 Ill. 2d at 309, 549 N.E.2d at 1247. An action is in reality a suit against the State when the following factors are present:

"  '(1) no allegations that an agent or employee of the State acted beyond the scope of his

-5-

authority through wrongful acts [(scope of authority)]; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment [(source of duty)]; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State [(normal and official functions)].' " *Healy*, 133 Ill. 2d at 309, 549 N.E.2d at 1247 (quoting *Robb v. Sutton*, 147 Ill. App. 3d 710, 716, 498 N.E.2d 267, 272 (1986)).

¶ 23                                    1. *Scope of Defendant's Authority*

¶ 24        Plaintiff argues the fact he alleged defendant acted with malice was sufficient to demonstrate defendant's acts exceeded the scope of his authority. Defendant, on the other hand, argues nothing in the termination letter shows defendant was acting outside of the scope of his employment. We agree with defendant.

¶ 25        In *Wozniak v. Conry*, 288 Ill. App. 3d 129, 135, 679 N.E.2d 1255, 1260 (1997), a case not cited by either party, we found an action brought by an associate professor against a department head for tortious interference with an employment contract was barred by sovereign immunity. There, the plaintiff alleged the defendant had interfered with his employment relationship by knowingly making false allegations about the plaintiff. *Wozniak*, 288 Ill. App. 3d at 130-31, 679 N.E.2d at 1256-57. The court held the plaintiff's claim was actually against the State because the defendant's comments were in regard to personnel decisions and involved work-related conduct within the scope of his authority. *Wozniak*, 288 Ill. App. 3d at 135, 679 N.E.2d at 1260. The *Wozniak* court found the relevant inquiry to determine scope of authority is "whether the supervisor would be acting within the scope of his duties by making truthful statements of the general type alleged." *Wozniak*, 288 Ill. App. 3d at 133-34, 679 N.E.2d at 1258.

¶ 26        In this case, our review of the termination letter reveals nothing suggesting any malicious intent. Instead, the statements made in the letter are of the work-related type made by a person who, as part of his job responsibilities, deals with personnel matters. In fact, during the hearing before the trial court, plaintiff did not dispute writing a termination letter was within the scope of defendant's employment. Further, if the type of statements contained in the letter were true, it is clear defendant would be acting within the scope of his authority to carry out his personnel-related duties. See *Welch v. Illinois Supreme Court*, 322 Ill. App. 3d 345, 354, 751 N.E.2d 1187, 1195 (2001) (an employee's actions are considered within the scope of employment where the alleged facts are consistent with an intent to further the State's business); *Wozniak*, 288 Ill. App. 3d at 133-34, 679 N.E.2d at 1258. Here, the statements in the letter can be reasonably viewed as being within the scope of defendant's job responsibilities as an assistant dean and departmental director. As a result, we find defendant's alleged conduct did not exceed the scope of his authority. Accordingly, the first factor of the three-factor test has been satisfied.

¶ 27                                            2. *Source of Duty*

¶ 28        Plaintiff argues defendant owed plaintiff a duty independent of his state employment because defamation, false light, and tortious interference with contractual relations are

-6-

common law duties applicable to all citizens, *i.e.*, not just state employees.

¶ 29 "[W]here the employee is charged with breaching a duty imposed on him *independently* of his State employment, sovereign immunity will not attach and a negligence claim may be maintained against him in circuit court." (Emphasis in original.) *Currie*, 148 Ill. 2d at 159, 592 N.E.2d at 980. However, sovereign immunity exists where the duty is unique to state employment and the lawsuit challenging the conduct could affect the actions and policies of the State. See *Currie*, 148 Ill. 2d at 158, 592 N.E.2d at 980 ("[a]n action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability"). Further, the *Wozniak* court rejected a similar argument by the plaintiff who argued the defendant had a general duty not to interfere with the contractual relationships of others. *Wozniak*, 288 Ill. App. 3d at 133, 679 N.E.2d at 1258. Instead, the court held allowing the suit against the defendant in his individual capacity would limit his ability to engage in lawful activity on behalf of the University, such as communicating, allocating tasks, and making personnel or employment decisions. *Wozniak*, 288 Ill. App. 3d at 134, 679 N.E.2d at 1259.

¶ 30 In this case, drafting the letter was related to defendant's duties as an assistant dean and director of the college of engineering. Moreover, plaintiff's suit challenging defendant's conduct could potentially affect state policies and control state actions regardless of the remedy sought by plaintiff. A judgment for plaintiff could also directly influence how persons in positions similar to defendant's position handle personnel matters in the future. As a result, we find the duty plaintiff alleged defendant breached was not owed to plaintiff independent of his state employment. We note plaintiff relies heavily on *O'Connor v. Smith*, 49 Ill. Ct. Cl. 153 (1996), in arguing defendant had a duty independent of his state employment not to defame plaintiff. However, *O'Connor* is a Court of Claims case, which this court is not bound to follow. We conclude the second factor of the three-factor test has been satisfied.


¶ 31                    3. *Normal and Official Functions of the State*

¶ 32 Plaintiff argues his allegations of malicious conduct necessarily places defendant's actions outside a state employee's authority as a matter of law. We disagree.

¶ 33 Under the third factor, the question is whether the complained-of actions involve matters ordinarily within that employee's normal and official functions. *Jinkins v. Lee*, 209 Ill. 2d 320, 330, 807 N.E.2d 411, 418 (2004) (quoting *Healy*, 133 Ill. 2d at 309, 549 N.E.2d at 1247). We note the first and third factors overlap to some extent in this regard. *Jackson v. Alverez*, 358 Ill. App. 3d 555, 560, 831 N.E.2d 1159, 1164 (2005). In evaluating the third factor, courts have considered whether the matter was "a uniquely governmental function." *Cortright v. Doyle*, 386 Ill. App. 3d 895, 905, 898 N.E.2d 1153, 1162 (2008). The issue of whether a function is uniquely governmental is also relevant to the second factor in that it relates to the source of defendant's duty. See *Currie*, 148 Ill. 2d at 160, 592 N.E.2d at 981. Accordingly, we need only determine whether the actions complained of involve matters ordinarily within defendant's normal and official functions. See *Cortright*, 386 Ill. App. 3d

at 905, 898 N.E.2d at 1162. In this case, defendant's position as an assistant dean and departmental director involved carrying out personnel-type duties such as writing the termination letter, which is precisely the conduct of which plaintiff complains.

¶ 34    We note plaintiff relies on *Hoffman v. Yack,* 57 Ill. App. 3d 744, 748, 373 N.E.2d 486, 490 (1978), for the proposition once "an employee of the State exceeds his authority by wrongful acts, he ceases to be a representative of the State, and the injured party may seek relief from the wrongdoer personally." In *Hoffman*, the trial court held an action against a department supervisor at Southern Illinois University, which alleged the defendant interfered with the plaintiff's prospective economic advantage in continuing to hold a tenured teaching position, was not a suit against the State. *Hoffman*, 57 Ill. App. 3d at 746, 373 N.E.2d at 488.

¶ 35    However, in *Hoffman*, the plaintiff alleged, *inter alia*, the defendant (1) diverted and intercepted the plaintiff's mail, (2) urged plaintiff's students to fill out poor teacher rating forms, and (3) communicated to the plaintiff's supervisors false accusations regarding the plaintiff's professional competency, racist views, sexual conduct, and lack of integrity. *Hoffman*, 57 Ill. App. 3d at 746, 373 N.E.2d at 488. The *Hoffman* court found because of the nature of the defendant's acts, he ceased to be a representative of the State and thus could be sued individually. *Hoffman*, 57 Ill. App. 3d at 748, 373 N.E.2d at 490. The court also found the suit was not against the State because judgment for the plaintiff would not affect, control, or subject the State to liability. *Hoffman*, 57 Ill. App. 3d at 748, 373 N.E.2d at 490.

¶ 36    The *Wozniak* court clarified the holding in *Hoffman* and found "a suit was not against the [S]tate when the defendant supervisor made personal accusations that did not relate solely to the employee's job." *Wozniak*, 288 Ill. App. 3d at 135, 679 N.E.2d at 1259; *Nikelly v. Stubing*, 204 Ill. App. 3d 870, 877, 562 N.E.2d 360, 364 (1990) (noting the plaintiff's allegations in *Hoffman* "were so egregious that it could be inferred they were actuated by personal animus toward the plaintiff, and could not have been motivated by concern for the welfare of the university"). Here, defendant's statements in the termination letter did not involve any false personal accusations not relevant to plaintiff's employment. Instead, the statements contained in the letter bore directly on the requirements of plaintiff's position and his failings in that regard. Thus, we find the third factor has been satisfied.

¶ 37    Applying the three-factor analysis, we find plaintiff's tort claims are in reality claims against the State. As a result, those claims are barred from consideration by the trial court and should instead be heard in the Court of Claims. Thus, the trial court did not err in granting defendant's motion to dismiss for lack of jurisdiction. Because we resolve the case on sovereign immunity grounds, we need not address the additional issue of whether the court erred in denying plaintiff's request to amend his complaint.

¶ 38                                    III. CONCLUSION

¶ 39    For the reasons stated, we affirm the trial court's judgment.

¶ 40    Affirmed.