2022 IL App (1st) 190269-U

SIXTH DIVISION
August 19, 2022

Nos. 1-19-0269 & 1-19-1590
(Consolidated)

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOSE ANTONIO COSSIO, JR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 15 L 65040 |
| JOHN D. TOURTELOT, JAMES DILLON, | ) | |
| KEVIN CONNELLY, TRACY LADNER, | ) | |
| MICHAEL MASTERS, in Their Official and | ) | |
| Individual Capacities, and COOK COUNTY, | ) | Honorable |
| | ) | Patricia O'Brien Sheahan, |
| Defendants-Appellees. | ) | Judge presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Justices Mikva and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's orders dismissing plaintiff's complaint are affirmed on grounds of sovereign immunity, tort immunity, and *res judicata*.

¶ 2    Plaintiff Jose Antonio Cossio, Jr., appeals the dismissal of his complaint raising a variety of tort (and other) claims against Defendants John D. Tourtelot (a state court judge), James Dillon, Kevin Connelly, Tracy Ladner, Michael Masters (Cook County officials), and Cook County itself. Cossio, *pro se*, has been litigating in state and federal court for nearly eight years ever since the

County fired him for neglecting to disclose on his employment application his bad conduct discharge from the military, two court martials, and multiple criminal convictions. The two largely dispositive issues presented on appeal are as follows:

(1)     Did the circuit court err in dismissing Cossio's claims against the state court judge because those claims are barred by Illinois' sovereign immunity statute?

(2)     Did the circuit court err in dismissing Cossio's claims against the County employees and Cook County because those claims are barred under the Illinois' tort immunity statute?

For the following reasons, we affirm.

¶ 3                                                    I.

¶ 4     Jose Cossio worked as a Fleet Manager for the Cook County Bureau of Administration. The County fired him in October 2014 after it came to light that Cossio lied on his employment application and failed to disclose his bad conduct discharge from the United State Air Force stemming from two court martials and convictions for larceny, communicating threats, and use of a government computer for identity theft. In addition, during the County's investigation, Cossio failed to cooperate with the Office of Inspector General and was repeatedly dishonest. For all these reasons, the Cook County Employee Appeal's Board affirmed Cossio's termination, and we affirmed the Board's decision. *Cossio v. Cook County*, 2017 IL App (1st) 160654-U.

¶ 5     After he was fired from the County, Cossio brought this case where he sued a state court judge, several Cook County officials, and Cook County, alleging that they had conspired to affect his employment by disclosing his military convictions. This chapter of the saga began in July 2014 when Cossio appeared as a defendant in Judge Tourtelot's courtroom seeking to dissolve an order

of protection entered against him. In the course of a contentious hearing, petitioner's counsel elicited testimony from Cossio about his military service and that he worked for Cook County. Present in the courtroom were Judge Tourtelot and several Cook County sheriff deputies. According to Cossio's complaint, Judge Tourtelot warned Cossio to be careful that "no one finds out about this" and that it could affect his career. After the hearing, Judge Tourtelot ruled in Cossio's favor and dissolved the order of protection.

¶ 6    Approximately ten days later, someone from the Cook County Sheriff's Office called the Cook County Department of Homeland Security because Judge Tourtelot had reported to the Sheriff's Office that Cossio had called Judge Tourtelot on his personal phone. The Sheriff's Office expressed a suspicion that Cossio could have accessed the judge's personal number through his employment with the County. Michael Masters, then-director of the Department of Homeland Security, forwarded this report to other county officials, including Tracy Ladner, the director of the Department of Human Resources, who in turn forwarded the information to the Cook County Office of Inspector General.

¶ 7    The Sheriff's Office ultimately discovered that Cossio did not make the phone call to Judge Tourtelot. In the meantime, the Office of Inspector General's investigation into Cossio's military discharge and criminal convictions resulted in his termination.

¶ 8    This case was filed in the circuit court of Cook County in July 2015, but not before Cossio first paid a visit to Judge Tourtelot at his home to confront him about the "false allegations" and to give the judge "the opportunity to come clean prior to filing this suit." Defendants removed the case to federal court, and almost a year later, the federal district court dismissed plaintiff's federal claims and relinquished jurisdiction of state claims without prejudice. Plaintiff appealed the

dismissal of federal claims against Judge Tourtelot on the basis of judicial immunity. The United States Court of Appeals for the Seventh Circuit later vacated the district court's dismissal of federal claims against Judge Tourtelot, ruling that under federal common law, it was not clear from the complaint that the judge has absolute judicial immunity. *Cossio v. Tourtelot*, 725 Fed. Appx. 406, 411 (7th Cir. 2018). On remand, the district court ultimately granted Judge Tourtelot's motion for summary judgment. *Cossio v. Tourtelot*, No. 15 C 7746, 2019 WL 4749917 (N.D. Ill. Sept. 30, 2019).

¶ 9     Cossio refiled his state claims in the circuit court. He amended his complaint several times, adding and removing defendants and causes of action, but the basic factual allegations remained the same. He asserted claims for defamation, false light, intentional infliction of emotional distress, negligent interference with a business relationship, intentional interference with a business relationship, and civil conspiracy against defendants Tourtelot, Dillion, Connelly, Ladner and Masters. Cossio also alleged a claim for exceeding authorized access against defendants Tourtelot, Dillon and Connelly. Against Cook County, Cossio asserted claims for a violation of the Illinois Human Rights Act, *respondeat superior*, and negligent hiring. Through the various iterations of Cossio's complaint, the core allegations remained the same: namely, that Judge Tourtelot and the various County Defendants fabricated allegations against Cossio that cost him his job with the County.

¶ 10     As to the claims against Judge Tourtelot, the circuit court dismissed and held that those claims were barred by sovereign immunity. After the circuit court denied a motion for reconsideration, it made a finding pursuant to Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)), and Cossio filed a timely appeal.

¶ 11    On the claims against the other defendants, the circuit court ultimately dismissed those claims as well holding that tort immunity conferred upon local government bars tort claims against the County and that Cossio could allege no set of facts that would entitle him to relief. Cossio timely appealed that final judgment, (Ill. S. Ct. R. 303(a) (eff. July 1, 2017)), and we consolidated his two appeals.[1]

¶ 12                                          II.

¶ 13                          A.   Claims Against Judge Tourtelot

¶ 14    Cossio argues that the circuit court erred in dismissing his complaint. He contends that his claims against Judge Tourtelot were not barred by sovereign immunity, and he asserts that the Seventh Circuit's decision to reverse the dismissal of his federal claims demonstrates as much. Judge Tourtelot responds that the Seventh Circuit's decision was rooted in federal "judicial immunity" that is conceptually distinct from the state statutory immunity that served as a basis for the ruling below. A trial court's decision to grant a motion to dismiss is reviewed *de novo*. *Goldwater v. Greenberg*, 2017 IL App (1st) 163003, ¶ 13.

¶ 15    Judicial immunity in federal common law insulates judges from being sued except for (1) nonjudicial actions or (2) judicial actions taken in the complete absence of all jurisdiction. *Cossio*, 725 Fed. Appx. at 410. In contrast, under state law, sovereign immunity under the State Lawsuit Immunity Act is much broader: with limited exceptions, "the State of Illinois shall not be made a party or defendant in any court." 745 ILCS 5/1 (West 2014). One of those exceptions is found in

---

[1]    After briefing of both appeals, Cossio moved to stay proceedings pending the decision of the United States Court of Appeals for the Seventh Circuit in *Cossio v. Tourtelot*. After the Seventh Circuit issued its decision months later, Cossio again moved to stay pending the United States Supreme Court's decision in *United States v. Van Buren*. In light of the *Van Buren* decision, 593 U.S. ___, 141 S. Ct. 1648 (2021), Cossio concedes that the dismissal of the claim for exceeding authorized access was proper, and it is no longer an issue in this appeal.

the Court of Claims Act, which provides that the Court of Claims "shall have exclusive jurisdiction to hear and determine *** [a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit." 705 ILCS 505/8(d) (West 2014). The Seventh Circuit decision quite rightly recognized that the two doctrines are distinct and that its ruling had no preclusive effect on the issues in this case. *Cossio*, 725 Fed. Appx. at 410 ("This decision, applying federal common law of absolute judicial immunity, has no preclusive effect on his state-law defamation claim because only state immunity law applies to this claim."). So Cossio's assertions that the Seventh Circuit's decision controls this case are simply mistaken.

¶ 16 Does state sovereign immunity bar Cossio's claims against Judge Tourtelot? Cossio purports to bring his claims against Judge Tourtelot in his official and individual capacities. A suit against a state official in his official capacity is a suit against the official's office and is "no different than a suit against the State." *Parmar v. Madigan*, 2018 IL 122265, ¶ 21. The parties do not dispute that Judge Tourtelot, then an associate judge in the circuit court of Cook County, was a state official. See Ill. Const. 1970, art. VI, § 8 (creating office of associate judge). Thus, claims against Judge Tourtelot in his official capacity are plainly barred by sovereign immunity.

¶ 17 But what of the claims purportedly brought against the judge in his individual capacity? The determination of whether an action is one against the State does not depend "on the formal identification of the parties but rather on the issues involved and the relief sought." *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990). Sovereign immunity cannot be avoided "by making an action nominally one against the servants and agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Id.;* see also *Carmody*

*v. Thompson*, 2012 IL App (4th) 120202, ¶ 21. "However, when the suit sufficiently alleges the State's agent acted in violation of statutory or constitutional law or in excess of her authority, the action is not against the State and may be brought in the trial court." *Carmody*, 2012 IL App (4th) 120202, ¶ 21.

¶ 18    Whether an action nominally against a state employee is actually an action against the State depends on what is and is *not* alleged in the complaint:

> "[W]hen there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involved matters ordinarily within the employee's normal and official functions of the State, then the cause of action is only nominally against the employee." *Healy*, 133 Ill. 2d at 309 (quoting *Robb v. Sutton*, 147 Ill. App. 3d 710, 716 (1986)).

Further, an action is deemed an action against the state whenever judgment for plaintiff could either "operate to control the actions of the State or subject it to liability." *Janes v. Albergo*, 254 Ill. App. 3d 951, 958 (1993).

¶ 19    Here, Judge Tourtelot made a report to the Sheriff's Office about a phone call to his personal phone that he (mistakenly) thought came from Cossio. *First,* by its own terms, the judge's alleged statement amounted to reporting an *ex parte* and irregular communication from a litigant who had recently appeared in his courtroom in a "contentious" hearing. Court rules prohibit *ex parte* communications with litigants in most circumstances. See Ill. S. Ct. R. 63(A)(5) (eff. July 1, 2013); Cook County Cir. Ct. R. 17.1 (Feb. 1, 1985). Further, Illinois statute makes county sheriffs

responsible for courthouse security. 55 ILCS 5/3-6023 (West 2012). Thus, reporting an irregular phone call to the Sheriff's Office logically and quite reasonably falls within the scope of a judge's duties. *Carmody*, 2012 IL App (4th) 120202, ¶ 25 (statements in a termination letter fell within a state employee's personnel-related duties). Indeed, decisions from other jurisdictions have recognized the same. See, *e.g.*, *Brookings v. Clunk*, 389 F.3d 614, 621 (6th Cir. 2004); *Barrett v. Harrington*, 130 F.3d 246, 259 (6th Cir. 1997); *cf.* Maryland Judicial Ethics Comm., Op. 2004-07 (2004) ("A judge who reports criminal activity disclosed in the course of a judicial proceeding is, in the Committee's view, exercising a judicial function.").

¶ 20    Cossio argues that the alleged phone call could not have been an *ex parte* communication because the order of protection case had concluded. However, Judge Tourtelot received the call less than two weeks after the hearing with Cossio, within the 30-day period for a post-judgment motion. See *Blazyk v. Daman Exp., Inc.* 406 Ill. App. 3d 203, 206 (2010) ("For 30 days, a trial court retains jurisdiction over a matter that it has entered a final judgment."); *Yang v. Chen*, 283 Ill. App. 3d 80, 85 (1996) ("A trial court retains jurisdiction to reconsider judgments and orders within 30 days of their entry.").

¶ 21    *Second*, it seems self-evident that a judge's duty with regard to *ex parte* communications and security concerns arise from the judicial function itself, not independent of it. *Carmody,* 2012 IL App (4th) 120202, ¶ 30 (assistant dean's duties in connection with drafting a termination letter at a state university were attendant to his state employment).

¶ 22    *Third*, and largely redundant of the discussion above, Cossio's claims against Judge Tourtelot plainly involve matters "ordinarily" within a judge's normal and official functions. *Id.* ¶ 33 (assistant dean's personnel-type duties involved writing the termination letter).

¶ 23    Accordingly, Cossio's tort claims against Judge Tourtelot are in reality claims against the State: the claims for defamation, false light, intentional infliction of emotional distress, negligent and intentional interference with business relationship, and civil conspiracy are barred by sovereign immunity and properly belong in the Court of Claims.

¶ 24                                    B. Claims Against the County Defendants

¶ 25    Cossio argues that the circuit court also erred in dismissing his claims against the Cook County Defendants—James Dillon, Kevin Connelly, Tracy Ladner, Michael Masters and Cook County. The precise contours of his argument are difficult to grasp, but he suggests the defendants' conduct was pretextual. Suffice it to say, he believes the circuit court got it wrong. The County Defendants argue that Cossio's claims are barred under the Local Governmental and Governmental Employees Tort Immunity Act.

¶ 26    The Tort Immunity Act protects "local governments and public employees for liability arising from the operation of government." 745 ILCS 10/1-101.1 (West 2014). Cossio's claims rest on allegations that employees of the Sheriff's Office (Dillion and Connelly) transmitted information about Cossio's criminal history to the county Director of Homeland Security (Masters), who forwarded the information to the Director of Human Resources (Ladner), who forwarded the information to the County's Office of Inspector General. All this information sharing led to Cossio's termination—his principal claimed injury.

¶ 27    Cossio's claims against the individual County Defendants are largely barred under the Tort Immunity Act. Section 201 provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though

abused." 745 ILCS 10/2-201. Further, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause." 745 ILCS 10/2-208. "A public employee acting in the scope of his employment is not liable for any injury caused by his negligent misrepresentation or the provision of information either orally, in writing, by computer or any other electronic transmission, or in a book or other form of library material." 745 ILCS 10/2-210.

¶ 28   Here, Cossio's claims against the individual County Defendants are foreclosed to the extent that they rest on allegations that the county employees have learned information (here, Cossio's criminal history) during a judicial proceeding and transmitted that information to various county departments and offices. The above provisions of the Tort Immunity Act plainly bar claims arising from misrepresentation or provision of information.

¶ 29   Cossio argues that the County Defendants are not immune because their conduct was pretextual in that they received information from counsel opposite in the order of protection proceeding and they conveyed the information about Cossio's military convictions to his superiors. Perhaps Cossio is attempting to argue that the County Defendants' conduct was willful and wanton and therefore excepted from immunity. The circuit court in its written ruling considered whether Cossio's complaint, construed in the light most favorable to Cossio, pled an action for willful and wanton misconduct. However, Cossio did not allege in the complaint that the County Defendants' conduct was willful and wanton, nor did he specifically raise this issue in his opening brief. Further, where a statutory immunity provision unambiguously does not contain an exception for willful and wanton conduct, courts should not read such an exception into the provision. *Hess v. Flores*,

408 Ill. App. 3d 631, 646 (1st Dist. 2011) (citing *Ries v. City of Chicago*, 242 Ill. 2d 205, 224 (2011)). Section 2-210 does not contain language specifically addressing willful and wanton conduct. Without such language, section 2-210 must be construed as providing blanket immunity, under this court's previous decisions. *See Hess*, 408 Ill. App. 3d at 647; *Ware v. City of Chicago*, 375 Ill. App. 3d 574, 583 (1st Dist. 2007).

¶ 30     With regard to the claims against Cook County, Cossio made allegations of negligent hiring and failing to train and supervise its employees in the handling of information. He also alleged that Cook County is liable through *respondeat superior* for the alleged tortious acts of its employees in supposedly accessing Cossio's criminal history. These too are barred under the Tort Immunity Act.

¶ 31     Section 2-107 of the Tort Immunity Act provides that "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous or for the provision of information." 745 ILCS 10/2-107. Section 2-201 provides "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. Illinois courts recognize that hiring and firing decisions are considered policy determinations within the meaning of section 2-201. *Brooks v. Daley*, 2015 IL App (1st) 140392, ¶ 19; *Johnson v. Mers*, 279 Ill. App. 3d 372, 380 (1996). Hiring officials exercise discretion in making decisions to hire county employees, and the Act immunizes Cook County from liability resulting from such exercise of discretion. See *Johnson*, 279 Ill. App. 3d at 380 (a decision to hire a police officer is "an inherently discretionary act"). Further, section

2-107 unambiguously immunizes Cook County from liability related to information sharing by its employees.

¶ 32 Under the doctrine of *respondeat superior*, the principal's liability is entirely derivative upon the agent's conduct, and it is axiomatic that where the agent is not liable, the principal cannot be liable. *Sperl v. Henry*, 2018 IL 123132, ¶ 27. This idea is expressed in section 2-109 of the Tort Immunity Act: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109. Because the Tort Immunity Act immunizes the individual County Defendants from Cossio's tort claims, Cook County cannot have *respondeat superior* liability.

## C. Remaining Issues

¶ 33 Separately, Cossio argues that the circuit court erred in dismissing his Illinois Human Rights Act claim based on *res judicata*. He contends that he did not have an opportunity in the earlier actions to fully litigate his claim that the County wrongly discriminated against him based on his bad conduct discharge. Cook County responds that *res judicata* applies because there had been a final judgment on the merits as to the claim. Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent cause of action between the parties or their privies on the same cause of action. *Cooney v. Rossiter*, 2012 IL 113227, ¶ 18. To establish *res judicata*, a party must show: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 396 (1993). If all three elements are present, *res judicata* will bar "not only every matter that was actually determined in the first suit, but also every matter that might have been raised and

determined in that suit." *Hudson v. City of Chicago*, 228 Ill. 2d 462, 471 (2008). The parties do not dispute the second and third elements.

¶ 34    Cossio had previously pled a Human Rights Act violation in his administrative review case challenging the Employee Appeals Board's decision. In that case, the circuit court affirmed Cossio's termination, and we affirmed that decision as well. *Cossio v. Cook County*, 2017 IL App (1st) 160654-U. *Res judicata* extends to matters that might have been raised and determined in that suit. Here, Cossio sought to bring the same claim, alleging that the County terminated his employment in a discriminatory manner based on his unfavorable military discharge. In light of the final judgment in his administrative review action, *res judicata* bars this claim.

¶ 35    Lastly, Cossio argues that the circuit court abused its discretion in denying him leave to add a spoliation of evidence claim. Whether to allow an amendment of a complaint is a matter within the sound discretion of the trial court. *Longo Realty v. Menard, Inc.*, 2016 IL App (1st) 151231, ¶ 38. An abuse of discretion is found only where no reasonable person would take the view adopted by the trial court. *Id.* The claim Cossio sought to add concerned emails and records that were allegedly withheld from him from the previous cases. Years into this multifront war with litigation in state and federal courts, Cossio offers no reason why he was so late in proposing to add this claim. See *Longo Realty*, 2016 IL App (1st) 151231, ¶ 38. After years of allowing numerous amendments, the circuit court acted within her discretion in denying Cossio's motion for leave to add the spoliation of evidence claim.

¶ 36                                            CONCLUSION

¶ 37    For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.